CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
JAMES S. THREATT (Bar No. 325317)
(E-Mail: Jimmy_Threatt@fd.org)
REBECCA ABEL (Bar No. 298604)
(E-Mail: rebecca_abel@fd.org)
JONATHAN C. AMINOFF (Bar No. 259290)
(E-Mail: jonathan_aminoff@fd.org)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
BERNHARD EUGEN FRITSCH

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:17-CR-00520-DSF |
| Plaintiff, | **DEFENDANT BERNHARD EUGEN FRITSCH'S *EX PARTE* APPLICATION TO CONTINUE TRIAL; DECLARATION OF COUNSEL; [PROPOSED ORDER]** |
| v. | |
| BERNHARD EUGEN FRITSCH, | |
| Defendant. | **Jury Trial: January 14, 2025** |
| | **Proposed Trial Date: February 4, 2025** |

Defendant BERNHARD EUGEN FRITSCH, through counsel, hereby applies to this Honorable Court *ex parte* for an Order to continue the trial date.

//

//

//

1

This application is based on the attached declaration of counsel, all files and records in this case, and such further information as may be provided to the court with respect to this application.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: January 6, 2025   By  /s/ *Jonathan C. Aminoff*
REBECCA ABEL
JAMES S. THREATT
JON C. AMINOFF
Deputy Federal Public Defenders
Attorneys for BERNHARD EUGEN FRITSCH

## DECLARATION OF COUNSEL

I, Jonathan C. Aminoff, declare:

1. I am an attorney with the Office of the Federal Public Defender for the Central District of California. I am appointed to represent Defendant Bernhard Eugen Fritsch in the above-captioned case.

2. Mr. Fritsch is charged with two counts of wire fraud in violation of 18 U.S.C. § 1343. (Dkt. No. 19.) He was previously charged with three counts of money laundering, but the Court dismissed those counts on the government's motion. (Dkt. 371.)

3. Mr. Fritsch made his initial appearance in this district on August 3, 2017. (Dkt. 6.) Mr. Fritsch has been represented by retained counsel for much of the pendency of this case. The public defender was appointed most recently on August 4, 2023. (Dkt. 267.)

4. The defense requests to continue the trial in this matter three weeks, to February 4, 2025, or any date thereafter that the Court is available. Although there have been prior continuances of the trial date in this matter, this is the first request to do so *ex parte*.

5. The defense requests a continuance based on the following facts, which the defendant believes demonstrate good cause to support the appropriate findings under the Speedy Trial Act:

6. On January 3, 2025 at 4:09 PM, I emailed government counsel to inquire about the production of FBI interview memoranda, particularly of its trial witnesses. There had been a number of witnesses who had spoken to the government over the last six weeks but for whom the government had not yet produced any notes, interview memos, or other discovery. Even putting aside Jencks, such memos almost always include Brady material that must be produced well in advance of trial. Their attachments are routinely relied on by the government in its case-in-chief and must be produced under Rule 16. The government's witness list also included at least two

3

1  witnesses for whom the defense has never received any discovery, or any interview
2  with the investigators in this case.
3      7.  That same day, government counsel replied that there was a discovery
4  production in the "queue" for production later that day.  Defense counsel received a
5  link where we could download a production at 4:37 PM on January 3, 2025.
6      8.  Defense counsel immediately began reviewing the production, which
7  includes 836 pages and largely consisted of interview notes from witnessed interviewed
8  over the last 30 to 45 days, interview memoranda, and associated documents.  The
9  index, which is attached as Exhibit A, is 13 pages long.
10     9.  In a footnote in the letter accompanying the production, government
11 counsel also informed defense counsel that on December 27, 2024, Jim Polsen, the
12 former Chief Financial Officer of StarClub, had produced more than 11 GB of
13 materials to government counsel.  The government did not notify the defense of this
14 production for another seven days, or until January 3, 2025.  Even then, government
15 counsel did not actually produce the documents.
16     10. Upon reviewing the letter accompanying the January 3 production, defense
17 counsel immediately contacted government counsel, specifically at 4:48 PM on January
18 3.  In particular, defense counsel sought further clarification on the nature of the 11 GB
19 produced by the former CFO, all of which apparently pertained specifically to
20 StarClub.  The government responded at 5:13 PM to indicate that they "have no further
21 information regarding the Polsen data.  We have not reviewed the data."
22     11. Because the government waited until the end of the day on Friday, January
23 3 to notify the defense of the existence of these materials, and because the materials
24 were allegedly too large to transmit via a file-sharing service, the only option offered to
25 the defense by the government to retrieve the 11 GB was to manually deliver and
26 download a flash drive of the new Polsen materials from the FBI office in Westwood.
27     12. An investigator employed by the Federal Public Defender travelled to the
28 Westwood office of the FBI first thing Monday morning, January 6, which was the first

1 opportunity offered by government counsel.  Defense counsel finally received the 11
2 GB of material at approximately 12:08 PM.  The hard drive was immediately provided
3 to the FPD's IT department for upload to the server where counsel can review
4 discovery materials.

5     13.    The defense is still trying to determine what, exactly, is included in the
6 production but thus far has concluded that it includes: 11.3 GB, 1206 subfolders, and
7 15,642 files.  As of the time of filing, the defense does not have a final page (as
8 opposed to file) count for the production.

9     14.    In addition to the sheer volume of the production, it cannot be emphasized
10 enough that just as important is _who_ produced these files to the government.  Mr.
11 Polsen was the Chief Financial Officer of StarClub for the entire relevant period.  He
12 began his employment in 2008 or 2009 and remained employed by the company after
13 the search warrants were executed on August 2, 2017.  In fact, he still remains as a
14 director of StarClub even though the company now largely exists only on paper.  The
15 government first interviewed Mr. Polsen on August 2, 2017, the same day Mr. Fritsch
16 was arrested.  Since that day, government counsel has interviewed Mr. Polsen on at
17 least seven other occasions over the ensuing seven years.  Yet, it was not until
18 December 27, 2024, on the eve of trial, that the government obtained the 11 GB of data
19 from Mr. Polsen.  The government had interviewed Mr. Polsen just one month prior, on
20 November 27, 2024, which is when he apparently mentioned the existence of the 11
21 GB.  The government, however, waited an entire month to actually take possession of
22 the new materials, and then another 10 days passed until the material was produced to
23 the defense.

24     15.    The obvious also bears worth mentioning: in a case of alleged
25 misappropriation of corporate funds, there could be no more important source of
26 evidence than the company's long-time Chief Financial Officer, in this case Jim Polsen.
27     16.    In his December 27, 2024 interview, Mr. Polsen confirmed that these
28 materials include "cop[ies] of all of Polsen's StarClub files, including agreements and

financial statements." Perhaps more importantly, Mr. Polsen explained that these files had not been previously available to the parties. According to Mr. Polsen, these files were from his personal computer, and he "maintained more files at Polsen's residence than Polsen did at the StarClub offices." In other words, the 11GB of materials necessarily includes new documents, materials, and information.

17. On Saturday, January 4, 2025, the government also produced 288 pages of material largely involving its case agent and the only "victim" who will testify at trial, Daniel Guy. With the exception of two one-page emails, all of these materials are from July 7, 2020 or earlier—or at least four years old.

18. On Monday, January 6, 2025, the government produced an additional 98 pages of interview notes, memoranda, and additional documents reviewed with and provided by witnesses.

19. To effectively review the 11 GB of material provided by Jim Polsen such that it can be incorporated into Mr. Fritsch's trial defense, the defense requires more time than the eight days that presently remain until the current trial date. The defense respectfully requests a continuance of three weeks, to February 4, 2025. Although the defense is still trying to determine what exactly is included in the 11 GB provided by Mr. Polsen, the defense believes that three weeks will allow enough time to review the material and incorporate any relevant material into its trial presentation. Three weeks will hopefully also allow enough time for the defense to decide whether it needs to call Mr. Polsen as a defense witness in the event the government does not call him.

20. An initial review of a subset of the documents produced by Mr. Polsen confirms that it contains Brady material, including exculpatory financial and business records, never-before-seen investor presentations, and correspondence that directly contradicts allegations made by government witnesses. Further analysis is necessary in order to examine all of the documents and to consult with financial and investment experts to understand the documents' importance and incorporate them into their opinions and findings.

21. The government has decided to simply not review the material produced by Mr. Polsen. The defense, of course, has obligations to its client and must review the entirety of the 11 GB in order to fulfill its ethical obligations. Due to the volume and source of these belatedly produced materials, defense counsel will be ineffective unless a continuance of the trial date is granted.

22. The requested modest continuance of the trial date in this matter will serve the ends of justice and outweigh the interest of the public and defendant in a speedy trial.

23. The defendant is aware of this application and consents to the requested continuance.

24. The requested continuance is not based on general congestion of the Court's calendar, lack of diligent preparation by counsel, or any failure on the part of the government to obtain available witnesses.

25. At approximately 4:30 PM on January 6, 2025, I contacted AUSA Monica Tait via telephone, but just received her voicemail. AUSA Tait and AUSA Sara Lee called me back at approximately 4:35 PM, and at that time I explained that I intended to file this request for a continuance and the reasons therefore. AUSA Tait and AUSA Lee stated that they would need some time to consider the defense request for a continuance. Given the proximity of the trial date, I told AUSA Tait and Lee that I would need to file this request by 4:50 PM and would simply note that I had spoken with them and they did not yet have a position on this request. At 4:47 PM, I received an email from AUSA Tait that stated, in part, "We can't take a position this quickly, so we will respond after we review your filing."

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 6, 2025, at Los Angeles, California.

/s/ *Jonathan C. Aminoff* .
Jonathan C. Aminoff

7