UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>         v.<br><br>Bernhard Eugen Fritsch,<br>    Defendant. | CR 17-520 DSF<br><br>Order Re Defendant's Motion *in Limine* to Admit Testimony of an Expert Witness (Dkt. 485) |

Defendant Bernhard Eugen Fritsch renews his motion to admit the expert testimony of Taylor Ehrlich or Trevor Sturges.[1] Dkt. 485 (Mot.). The government opposes the motion and requests that the Court clarify the current status of the defense's three proffered expert witnesses. Dkt. 489 (Opp'n).[2]

### 1. Taylor Ehrlich or Trevor Sturges

Fritsch argues that, because the government has expended significant time at trial detailing expenses and payments to individuals and entities, some or all of which the government claims are not proper business expenses, the government has opened the door to Ehrlich's or

---

[1] The defense intends to call only one of these experts at trial. Dkt. 485-1.

[2] The Court may impose further limitations depending on the actual testimony offered.

Sturges's testimony regarding whether certain expenses were in fact valid business expenses.  Mot. at 2-3.[3]

In opposition, the government argues that expert opinion regarding the proper classification of business expenses is not relevant to the charged conduct because "the allegation here is that [Fritsch] promised he would use investor funds for certain specific purposes, and in fact, he did not use much of the funds for those purposes." Dkt. 489 (Opp'n) at 10.[4]

The Court concludes, consistent with its prior order, that because the government has "introduce[d] evidence or argument regarding the illegitimacy of StarClub's expenses[,]" it is now "appropriate for the defense to provide testimony regarding the legitimacy of Fritsch's use of those investor funds." Dkt. 445 at 8-9.  At this point in the proceedings, whether certain expenses were for business purposes or personal use is indeed a fact at issue.  The Court also finds the testimony to be relevant considering the government's allegation that Fritsch "promised he would use investor funds for certain specific purposes," including: "(a) to launch what it described as vertically integrated and interactive social media platforms (the 'Channels') for talent partners, celebrities, and global brands; (b) for technology enhancements related to such channels; and (c) **for working capital and general corporate purposes**."  Opp'n at 10, 10 n.9 (quoting Dkt. 19 (Indictment) at 4) (emphasis added).

The Court will permit Ehrlich or Sturges to testify as to whether certain expenses are corporate expenses, and reiterates that their

---

[3] Fritsch also requests that Ehrlich and Sturges be permitted to supplement their opinions to include testimony based on certain Bahamian financial records.  See Dkt. 485 at 4-5.  The Court addresses this request in a separate order.

[4] The Court rejects the government's contention that the expert testimony would be "superfluous and a waste of time[,]" Opp'n at 12, particularly considering the government's decision to call multiple witnesses and devote significant time at trial to various StarClub expenses and payments.

testimony is limited to the three categories of business expenses identified in the expert disclosures: "(1) expenses associated with properties used for business purposes; (2) fees paid for StarClub's management; and (3) expenses associated with travel for business." Dkt. 445 at 8 (quoting Dkt. 420-3 at 1 and 420-4 at 1). And the Court emphasizes, consistent with its prior order, that Ehrlich and Sturges are not permitted to testify as to their expert opinion that "it is not uncommon for companies to mistakenly classify non-business expenses as business expenses[.]" See id. at 9.

### 2. Annabelle Burguiere

The defense asserts that on March 25, 2025, the Court granted the defense request that Burguiere be permitted to offer limited testimony regarding StarClub's value, including the value of StarClub's intellectual property. Mot. at 1. It states that "Burguiere expects to offer testimony consistent with her March 1, 2025 expert notice, albeit condensed to more efficiently address the issues presented at trial." Id. In opposition, the government requests clarification as to whether the Court's ruling "was based on more than just D.G.'s testimony." Opp'n at 15. Because the government contends it has not otherwise placed the value of StarClub's technology at issue, it argues that Burguiere's testimony "should be limited to that necessary to meet the D.G. testimony." Id.

The Court's conclusion that StarClub's value is now at issue and that Burguiere's testimony is now relevant is based solely on D.G.'s March 25, 2025 testimony. Because D.G. testified that StarClub's value was, at least in part, its technology, Burguiere will be permitted to offer limited testimony.

Specifically, Burguiere may testify that (1) "the value of [a technology company's] intellectual property is central to the company's overall value"; (2) that "the primary markers of value were in StarClub's intellectual property assets"; and (3) that "StarClub controlled intellectual property assets." Dkt. 420-2. Burguiere may not testify regarding (1) the "[t]ype of intellectual property assets relating

3

to StarClub"; (2) "[s]tandard approaches to intellectual property valuation"; or (3) "[e]vidence of value relating to intellectual property assets connected to StarClub." Id. In other words, the only relevance of Burguiere's testimony is to support D.G.'s testimony that StarClub had value through its technology, not to provide a tutorial on intellectual property and patents.

### 3. Eugene Izumo

The Court previously ordered that Izumo will be permitted to testify "regarding the capital investment process" to rebut anticipated testimony from D.G. "regarding his approach to making investments and the kinds of information investors generally request during the investment process and why." Dkt. 445 at 4. In a subsequent order, the Court agreed with the government's argument that evidence of reliance is relevant and ordered that Izumo will be permitted "to testify to reliance—or rather the lack of reliance." Dkt. 482 at 1. Now, the government requests that the Court clarify the permissible scope of Izumo's expert testimony. Dkt. 489 (Opp'n) at 12.

Izumo may explain: (1) the capital raising process, including that the capital raising process "varies depending on many factors including the size and stage of development of the company"; (2) the capital raising process "generally involves a due diligence period during which the potential investor gathers and analyzes information in order to assess risk and opportunity and determine whether to invest"; (3) that whether and to what extent due diligence is expected to occur is "dependent on the sophistication of the potential investor"; (4) when a "sophisticated investor, such as a hedge fund manager, is the investor, then a robust due diligence would be expected"; and (5) generally what can be expected during the due diligence period. Dkt. 420-1 at 1-2.[5]

---

[5] In the wire fraud context, "materiality is judged in relation to the persons *to whom the statement is addressed.*" United States v. Galecki, 89 F.4th 713, 737 (9th Cir. 2023), cert. denied, 145 S. Ct. 546 (2024) (emphasis in original). Because evidence has been presented at trial regarding D.G.'s level of

4

Izumo may not testify as to whether an acquisition or exit is rare for an early-stage social media company or whether a reverse merger is rare for an early-stage company in the United States. Id. at 2.

IT IS SO ORDERED.

Date: April 1, 2025

_____
The Honorable Dale S. Fischer
United States District Judge

---

sophistication as an investor, including that he is a hedge fund manager, Izumo will be permitted to testify as to the due diligence that would be expected of a sophisticated investor.