BILAL A. ESSAYLI
United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
MONICA E. TAIT (Cal. Bar No. 157311)
SARAH S. LEE (Cal. Bar No. 311480)
JOSEPH DE LEON (Cal. Bar No. 313471)
Assistant United States Attorneys
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2931/7407/7280
     Facsimile: (213) 894-6269
     E-mail:   monica.tait@usdoj.gov
               sarah.lee@usdoj.gov
               joseph.de.leon@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CR No. 17-00520-DSF |
|---|---|
| Plaintiff, | MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR REMAND PURSUANT TO 18 U.S.C. § 3143(A)(1); DECLARATION AND EXHIBITS IN SUPPORT |
| v. | |
| BERNHARD EUGEN FRITSCH, | |
| Defendant. | Hearing date: June 2, 2025<br>Time: 8:30 a.m.<br>Place: Courtroom 7D, before the Honorable Dale S. Fischer, United States District Judge |

     Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Monica E. Tait, Sarah S. Lee, and Joseph De Leon, hereby files its Memorandum of Points and Authorities and Declaration and Exhibits in support of its

i

oral Motion made after the jury's guilty verdict for remand of defendant into custody.

The motion for remand is based upon the attached memorandum of points and authorities, declaration, and exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Pursuant to the Court's Order Regarding Post-Trial Motions And Sentencing Date (dkt. 522), the hearing date for this motion is June 2, 2025.

Dated: April 28, 2025                    Respectfully submitted,

                                         BILAL A. ESSAYLI
                                         Acting United States Attorney

                                         LINDSEY GREER DOTSON
                                         Assistant United States Attorney
                                         Chief, Criminal Division


                                         _____/s/_____
                                         MONICA E. TAIT
                                         SARAH S. LEE
                                         JOSEPH DE LEON
                                         Assistant United States Attorney

                                         Attorneys for Plaintiff
                                         UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                                      PAGE


TABLE OF AUTHORITIES.............................................................ii

MEMORANDUM OF POINTS AND AUTHORITIES.............................................1

I.    INTRODUCTION..............................................................1

II.   FACTUAL BACKGROUND........................................................1

      A.    TRIAL AND VERDICT...................................................1

      B.    UPCOMING SENTENCING.................................................2

      C.    CURRENT RELEASE CONDITIONS, AND VIOLATIONS OF
            CONDITIONS..........................................................4

            1.    Release Conditions............................................4

            2.    Defendant's Violations of Release Conditions,
                  Leading to 2024 Bankruptcy Case...............................5

            3.    Defendant's Financial Resources...............................9

III.  ARGUMENT.................................................................10

      A.    DETENTION PENDING SENTENCING IS SUPPORTED BY THE
            STATUTORY SCHEME...................................................10

      B.    DEFENDANT IS A FLIGHT RISK.........................................11

      C.    DEFENDANT IS A DANGER TO THE COMMUNITY.............................12

IV.   CONCLUSION...............................................................14

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                          PAGE

**Cases**                                                                         **Page(s)**

United States v. Reynolds,
  956 F.2d 192 (9th Cir. 1992) .................................. 13

**Statutes**

8 U.S.C. § 1101 ................................................. 12

8 U.S.C. § 1227 ................................................. 12

18 U.S.C. § 1343 ............................................... 1, 2

18 U.S.C. § 3143 ............................................... 10

**Rules**

Fed. R. Crim. P. 46 ............................................ 10

**Other**

U.S.S.G. § 2B1.1 ............................................... 3, 4

U.S.S.G. § 3C1.1 ............................................... 4

U.S.S.G. § 4C1.1 ............................................ 4, 6, 10

i

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

**I.   INTRODUCTION**

On April 3, 2025, a jury convicted defendant BERNHARD EUGEN FRITSCH ("defendant") of one count of wire fraud.  The government made an oral motion for defendant's remand into custody pursuant to 18 U.S.C. § 1343(a)(1) after the guilty verdict, and the Court requested briefing from the parties.  The government requests defendant's remand into custody because he cannot carry his burden of proving by clear and convincing evidence that he is not likely to flee, or that he does not pose a danger to the community, if he remains released pending sentencing.

**II.   FACTUAL BACKGROUND**

**A.   TRIAL AND VERDICT**

After a 3-week trial, on April 3, 2025, a jury found defendant guilty of Count One of the Indictment against him, which charged him with wire fraud in violation of 18 U.S.C. § 1343.  The Indictment alleged that defendant conducted a scheme to defraud investors spanning from 2014 to 2017 in connection with his former company, StarClub, Inc.  As the government proved at trial, defendant made several false statements to induce investments, including the following: (1) that StarClub generated $15 million in revenue in 2015; (2) that Disney and Yucaipa were on the verge of acquiring part or all of StarClub or planning commercial partnerships with StarClub; and (3) that Access Industries, Credit Suisse, and Warner were current StarClub investors.  See Jury instructions, Dkt. 510 at 21 (describing scheme).  In addition, when soliciting funds from potential investors, defendant also represented that StarClub would use investor money for certain specified purposes, including to

launch channels for celebrities, for technology enhancements related to such channels, and for working capital and general corporate purposes.  Id. at 22.  The trial evidence proved that defendant instead used much of the investors' money to fund his extravagant lifestyle, including his purchase of a McLaren and a Rolls Royce using a Montana-domiciled corporate shell, payments to remodel and fund his Malibu mansion (3229 Rambla Pacifico, discussed below), payments to fix and maintain his yacht, his personal chef, and other extravagant purchases.  In finding defendant guilty of Count One, the jury found that defendant caused victim Danny Guy to wire $7 million on January 30, 2015, to execute the scheme to defraud.  The evidence at trial showed that Guy invested a total of $22.4 Million from early 2014 to and including November 2015 based on defendant's continuous misrepresentations over the course of their relationship.[1]

B.    UPCOMING SENTENCING

Sentencing is set for October 20, 2025.  The statutory maximum sentence for wire fraud is 20 years' imprisonment.

Loss is likely to be the main driver of defendant's Advisory Guidelines sentence calculation.  Danny Guy invested a total of $22.4 million from the investment funds he managed, Salida Capital and Harrington Global, including the $7 million invested via Count One and an additional $6 million he invested in November 2015.  In addition to the Salida/Harrington investments, Guy recruited and referred other investors to StarClub, believing the false claims

---

[1] The jury acquitted defendant of Count Two, which charged a separate execution of the wire fraud scheme:  a $1 million wire on January 25, 2016 from victim I.M., who did not testify at trial due to his health condition.

2

defendant had made to Guy, including victims Ian Mann, S.B., D.C. (through Clarrence AG), members of the R.P. family, B.O., and F.S.; these victims collectively invested more than $2.3 million. See Trial Exhibit 901 (excerpt attached, highlighted (excludes the R.P. family members, whose contributions came via an agent)).  By the time the FBI arrested defendant in August 2017, StarClub (along with its sister company, US Mastertec) was in shambles with almost nothing left in the bank.  See Trial Exhibits 901 at 1 ($30,030.36 remaining in -7995 account); 903 at 1 ($49,133.58 remaining), 910 at 1 ($6,991.58), 912 ($6,102.60)).  At the time of his arrest, defendant was desperately trying to raise $25 million from an undercover FBI agent posing as an investor.  See Dkt. 319 at 8-12 (Government's Motion in Limine #3, describing defendant's spring 2017 pitch to new investor, who was actually an FBI undercover agent).

Thus, the investors Guy recruited lost all the money they invested, and they never would have invested had defendant not lied to Danny Guy (and directly to them, in some cases).  Accordingly, the current minimum estimated guidelines calculation is as follows:

Base Offense Level    : 7    [U.S.S.G. § 2B1.1(a)(1)(A)]

Specific Offense
Characteristics

Loss greater than $9  : +20  [U.S.S.G. § 2B1.1(b)(1)(K)]
million but less
than $25 million[2]

---

[2] This number is an undercount.  It assumes Guy lost only $13 million (his last two investments), and that the Guy-related investors lost only $2.3 million.  In fact, Guy invested $22.4 million, and StarClub received about $37 million in total from investors during the scheme time period.  Accordingly, the loss figure may be above $25 million at sentencing.

| | | | |
|---|---|---|---|
| 10 or more victims | : | +2 | [U.S.S.G. § 2B1.1(b)(2)(A)(i)] |
| Adjustments to be determined[3] | | | |
| Acceptance of responsibility | : | 0 | |
| Minimum Total Offense Level | : | 29 | 87-108 months imprisonment, assuming Criminal History level I |

**C.    CURRENT RELEASE CONDITIONS, AND VIOLATIONS OF CONDITIONS**

Defendant is a German national and Germany does not extradite its nationals.  See Dkt. 230 and Ex. A (Opposition to defendant's request to travel to Germany).

### 1.    Release Conditions

Defendant is currently released on bond.  See Dkt. 48 (initial and master set of release conditions).  The bond conditions have been modified multiple times to remove properties as security (that of Lisa Short, defendant's ex-wife, as well as an empty lot adjacent to the Malibu mansion), and to replace ankle bracelet monitoring with virtual/biometric location monitoring without residential restrictions.  See Dkt. 136 and 166; 158 (Lisa Short security removed and bond reduced); 165 (electronic monitoring).

_____

[3] By attempting to sell his McLaren and Rolls Royce after his arrest, defendant may have obstructed justice within the meaning of U.S.S.G. § 3C1.1, which would add 2 levels.  See Dkt. 318 (Government's Motion in Limine #2 To Admit Evidence Of Defendant's Post-Arrest Attempt To Sell His McLaren And Rolls Royce).  In addition, one or more of the victims may qualify as vulnerable victims pursuant to U.S.S.G. § 3C1.1(b).

Defendant will likely argue for a downward zero-point offender adjustment pursuant to U.S.S.G. § 4C1.1, but this adjustment may not apply, because at least one victim may have suffered substantial financial hardship.  See U.S.S.G. § 4C1.1(a)(6).

4

The appearance bond amount is $7,439,129.07, which is supposed to be secured to the extent of $7,205,000 by a deed of trust recorded against the Malibu mansion.  Dkt. 166 at 1; Dkt. 59 (deed of trust).  In addition, $134,129.07 is secured by the Minnesota property of defendant's cousin, Marc Montgomery.  Dkt. 166 at 1; Dkt. 70 (deed).[4] Defendant's son, David Stocker, is an unsecured surety to the extent of $100,000.  Dkt. 166.

Defendant's release conditions include conditions designed to protect the collateral for the Court's bond, and protect the public from the defendant:

- Defendant "shall make all . . . property tax payments on the Malibu Property to keep the  . . . taxes current."

- Defendant "shall not solicit, or attempt to solicit, directly or indirectly, persons to invest funds in a company."

- Defendant "shall not sell, transfer, or give away any asset valued at $1,000 or more without notifying and obtaining permission from the Court."

Dkt. 48 at 2-3.

        2.    <u>Defendant's Violations of Release Conditions, Leading to 2024 Bankruptcy Case</u>

Defendant has at all times been aware that the Court's bond was secured by and recorded against his Malibu mansion.  <u>See</u> Dkt. 59 at 2

---

[4] Mr. Montgomery has filed a lawsuit against defendant seeking return of monies allegedly advanced to defendant during the pendency of this case.  Exhibit 1 (Complaint filed August 2, 2024, <u>Montgomery v. Fritsch, et al.</u>, 24 STCV 19745 (Los Angeles Superior Court)).  According to his attorney, Mr. Montgomery is no longer a willing surety; however, should defendant remain on release, the government would object to Mr. Montgomery's withdrawal as surety.  Tait Decl. at ¶ 2(b).

(defendant's signature on Deed of Trust); Exhibit 2 (December 20, 2024 email from courtroom deputy communicating defendant's request for a hearing requesting "approval of the sale of his primary residence to fund private counsel [and] modification of his bond with the sale of the residence," among other requests).  Yet, defendant never notified the Court of the following events affecting the bond:

- On December 16, 2022, defendant transferred title of the Malibu Mansion to La Verne Rambla, LLC, a company defendant controlled.  Exhibit 3 at 3.  Though signed December 16, 2022, the deed was notarized December 17, 2022.  Id.  This deed was recorded in Los Angeles County on December 21, 2022 as document number 20221189173.  No request for permission to conduct this transfer appears on the docket of this criminal case.  Because the Malibu mansion is an asset worth more than $1,000, this transfer violated the release condition that defendant shall not "transfer . . . any asset valued at $1,000 or more without notifying and obtaining permission from the Court."  Dkt. 48.

- On December 17, 2022, before the same notary, defendant signed on behalf of La Verne Rambla, LLC, a deed of trust granting Jayco Premium Finance of California ("Jayco") a $5,500,000 interest in the Malibu mansion to secure a loan from Jayco.  Exhibit 4 at 3, 26, 27 (the "Jayco lien").  This document was recorded December 21, 2022 as number 20221189174, immediately after the recording of the deed

6

described above from defendant to La Verne Rambla, LLC. This transfer violated the same release condition.

- On December 16, 2022, defendant transferred title of the Malibu mansion back to himself.  Exhibit 5 at 3.  Though signed December 16, 2022 and notarized December 17, 2022, this deed was not <u>recorded</u> until December 22, 2022, the day after the Jayco lien was recorded.[5]  This transfer violated the same release condition.

- On May 4, 2023, defendant again transferred title of the Malibu mansion from himself to La Verne Rambla, LLC, another violation of the release condition.  Exhibit 6 at 2.

On October 23, 2024, defendant signed a bankruptcy petition as the managing member of La Verne Rambla, LLC.  Exhibit 7 at 1, 4.  In the Summary of Assets and Liabilities filed November 6, 2024, in response to the question "Do any creditors have claims secured by debtor's property?," the debtor listed Jayco ($6.5 million claim), but not this Court or its secured bond filed as Dkt. 59.  Exhibit 8 at 6-7; Exhibit 9 (defendant's declaration under penalty of perjury certifying the Summary as true and correct).  It appears that nowhere on the bankruptcy petition or its schedules did defendant disclose to the parties in bankruptcy that the Malibu mansion is secured by the bond filed as Dkt. 59.

A trustee has been appointed by the bankruptcy court to administer the assets, including the Malibu mansion.  Declaration of

---

[5] It appears defendant transferred the property to the LLC in connection with obtaining the $5.5 million from Jayco, then immediately transferred it back to himself.

7

Monica E. Tait at ¶ 3. Based on a February 7, 2025 title report from Stewart Title, provided by the trustee's counsel, the court's lien does not appear on the chain of title for the property. Exhibit 10 at 1 (trustee's counsel's email indicating the bond is not reflected on title report) and 10-15 (title report, exception items 1-18, listing matters affecting title, and omitting any reference to the Court's deed securing the $7.2 million bond filed at Dkt. 59). The trustee's attorney has indicated that defendant never advised the trustee of the bond recorded against the Malibu mansion. Exhibit 11 at 1. The Malibu mansion is now pending sale in the bankruptcy proceeding for $13.4 million. Exhibit 10 at 1. Assuming the Court's bond is eventually recognized in first position (over Jayco's likely objection), then, setting aside delinquent property taxes[6] and the expenses of sale and bankruptcy administration, there are not sufficient sales proceeds to cover both Jayco's claim and the Court's bond ($13.4 million - $7.2 million bond = $6,195,000). But in light of the Court's deed not appearing on the Trustee's title report, the security for the Court's $7.205 million bond is presently in serious jeopardy.[7]

---

[6] Defendant has apparently also violated the bond condition requiring him to pay and keep current the property taxes on the Malibu mansion. See Exhibit 10, page 7 (Items B-E, showing more than $100,000 in taxes delinquent and defaulted for 2022-2024).

[7] The government has advised the trustee of the Court's bond, and the fact that the Court's deed is believed to be valid and has not been reconveyed, as far as the government is aware. See Exhibit 14 at 1 (email to trustee's counsel). The government has also caused the Clerk's office fiscal section to be advised of the situation. Tait Decl. ¶ 2(f).

8

### 3.    Defendant's Financial Resources

Defendant was represented at trial by the Office of the Public Defender.  However, defendant is hardly an indigent defendant. Instead, he appears to have access to resources he could use to flee.

At a hearing just prior to the commencement of trial, retained attorney Kirk Edward Schenck appeared and sought to represent defendant.  Although the Court declined to permit Mr. Schenck to join the case, Mr. Schenck was physically present in the public gallery of the Courtroom during most of the nine days of trial.  The Court may take judicial notice of the commonly-known fact that Los Angeles-area attorneys generally charge hundreds of dollars per hour for their time.  Accordingly, Mr. Schenck's presence throughout numerous trial days indicates that defendant had access to substantial financial resources to pay for Mr. Schenk's many hours of attendance, unlike the typical indigent defendant.

Second, defendant obtained a $5.5 million loan from Jayco in late 2022.  See Exhibit 4.  The government assumes that some of that money was used to repay a prior encumbrance on the property in favor of Deutsche Bank.  See Dkt. 207-1 at 16-19 (excerpt from a February 9, 2022 title report for Malibu mansion, showing a lien in favor of Deutsche Bank as item 15, ahead of the Dkt. 59 deed in favor of the Court).  Perhaps some portion was used to pay defendant's former counsel, Robert Henoch, who joined the case in early 2023 and departed a few months later.  But defendant should account for the full amount of any cash he received as a result of the Jayco financing, to the extent he has not already done so in in camera filings not shared with the government.

9

Finally, in July 2023, defendant, through counsel he presumably paid, filed a lawsuit in Santa Monica Superior Court on behalf of La Verne Rambla LLC against Jayco, and litigated a motion for injunctive relief.  See Exhibit 12 (Fritsch Declaration dated October 27, 2023 in case number 23SMCV03468).  Defendant then also claimed to have rental income relating from the Malibu property.  Id. ¶ 2 ("I rent out the [Malibu mansion] through AirBNB.  The rents I receive are most of my annual income.")

Defendant is obviously not indigent, and has access to resources he can use to flee.[8]

**III.  ARGUMENT**

**A.    DETENTION PENDING SENTENCING IS SUPPORTED BY THE STATUTORY SCHEME**

After a guilty verdict is returned, the law favors detention:

> Except as provided in paragraph (2) [mandatory detention, not applicable here], the judicial officer shall order that a person who has been found guilty of an offense and who is awaiting imposition or execution of sentence, other than a person for whom the applicable guideline promulgated pursuant to 28 U.S.C. 994 does not recommend a term of imprisonment, be detained, unless the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c).

18 U.S.C. § 3143(a)(1).  "The burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant."  Fed. R. Crim. P. 46(c).

---

[8] On April 24, 2025, the undersigned conferred by phone with Jonathan Aminoff, counsel for defendant, regarding changes to release conditions in lieu of the government filing this pleading seeking remand.  Mr. Aminoff indicated that defendant could offer additional sureties without justification (i.e., unsecured), but no additional secured property.  The government indicated that this was insufficient.

10

## B.    DEFENDANT IS A FLIGHT RISK

Defendant cannot meet his burden of showing that he will not flee should he remain released on bond.

The Court has already found multiple times that defendant is a flight risk.  See Dkt. 232 (denying permission to travel to Germany), 277 at 7 (foreign depositions).  As the Court has also observed, defendant's conditions of release have been relaxed over time:

> [T]he Court notes that the conditions that led to a stipulation for Mr. Fritsch's release on bond and suggested to the magistrate judge that Mr. Fritsch that the flight risk was adequately mitigated no longer exist – if indeed they ever did.  In any event, the factors that would have provided significant disincentive for Mr. Fritsch to flee have been significantly reduced. One or more sureties have been released, the method of location monitoring has been changed to alleviate alleged discomfort, *and the value and availability of the real property provided as security is questionable*.

Dkt. 232 at 1 (Order Denying Mr. Fritsch's Ex Parte Application To Modify The Conditions Of His Bond To Attend His Mother's Funeral And Reception In Germany), emphasis added.  Thus, the present conditions have become less and less likely to secure his presence.

Worse yet, the "value and availability" of the real property security is currently even more seriously in question, as shown by the Trustee's recent title report.  This jeopardy may have resulted from defendant's wholly unauthorized 2022 and 2023 transfers and retransfers of the Malibu mansion, performed without the Court's permission in violation of his bond conditions.  Had the defendant notified the Court and the government of his intent to transfer the property to an LLC, the pending lien through Jayco would likely also have been disclosed at that time, and the government and the Clerk's office would have had the opportunity to protect the priority

11

position of the bond against all comers.  Instead, defendant intentionally breached the Court's trust through his title transfers in order to obtain $5.5 million from Jayco, has endangered the Court's security, and cannot now show he can be trusted to follow the Court's orders should he remain on release.

Defendant is a German citizen who will be deported to that country after service of his sentence.  In the years since this case was filed, his ties to the community have decreased, in that his U.S.-based children are now adults and can be expected to support themselves.  Although defendant is a lawful permanent resident of the United States, an alien who is convicted of an "aggravated felony" is subject to deportation.  8 U.S.C. § 1227(a)(2)(A)(iii).  A fraud offense for which the loss exceeds $10,000 qualifies as an aggravated felony, 8 U.S.C. § 1101(a)(43)(M)(i), and here, the loss defendant caused to one victim alone totals many millions of dollars. Accordingly, in light of the jury's guilty verdict, it is now virtually certain that defendant will be stripped of his green card and deported to Germany upon the completion of his sentence.  Thus, defendant's choice is to remain in the United States and face many years in prison followed by deportation, or to "self-deport" to Germany or any other country he prefers, thereby saving himself both prison time and deportation proceedings.  It would be irrational for defendant to stay in the United States to face justice, and he should therefore be detained immediately.

**C.    DEFENDANT IS A DANGER TO THE COMMUNITY**

Nor can defendant carry his burden of proving that he is not a danger to the community.  Defendant's danger to the community may

12

encompass pecuniary or economic harm, not just physical harm.  Cf. United States v. Reynolds, 956 F.2d 192, 192 (9th Cir. 1992) (upholding district court's denial of bail pending appeal based on defendant's failure to show that he was not an economic danger to the community; defendant had also violated pretrial release condition).

As the Court knows from the trial evidence, defendant conducted a years-long, sophisticated fraud scheme involving multiple layers of corporate entities (US Mastertec, Greenwich Music Inc., 3229 Rambla Pacifico Inc., to name a few iterations) to disguise his siphoning of millions of dollars of investor money out of StarClub.  Defendant is a sophisticated fraudster who well knows how to conceal assets and his activities.  Should he remain free, there is an unacceptable risk that defendant will harm other investors and the community, particularly now that he has been convicted and the only thing he has to look forward to is a lengthy term of imprisonment to be imposed this fall.

Moreover, the current bankruptcy case is not defendant's first abuse of the bankruptcy system to avoid foreclosure.  Defendant has admitted that he filed two prior bankruptcy cases to stop foreclosure of the lot adjacent to the Malibu Mansion, not to obtain the fresh start for which the bankruptcy code was designed.[9]  See Exhibit 13 at pp. 3-4 (September 29, 2022 declaration by defendant in the matter In re La Verne Investors, LLC, 9:22-bk-10591-RC, admitting at ¶¶ 6 and 7 that that he filed that case, as well as a prior bankruptcy case (9:22-bk-10505-RC) to stop creditors from foreclosing on their

---

[9] Pursuant to the Order at Dkt. 166, this lot did not secure defendant's bond at the time of these bankruptcy filings.

13

liens).  Defendant will likely continue these efforts should he remain on release, at a minimum causing unwarranted expense to third parties.

**IV.   CONCLUSION**

For the foregoing reasons, defendant should be remanded into custody immediately.

14