UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

HONORABLE DALE S. FISCHER, JUDGE PRESIDING

UNITED STATES OF AMERICA,            )
                                     )
                                     )
                                     )
                Plaintiff,           )
                                     )
                                     )
                                     )
        Vs.                          )    No. CR17-00520-DSF
                                     )
                                     )
                                     )
BERNHARD EUGEN FRITSCH,              )
                                     )
                                     )
                                     )
                Defendant.           )
                                     )
_____     )

REPORTER'S TRANSCRIPT OF PROCEEDINGS

LOS ANGELES, CALIFORNIA

MONDAY, JUNE 2, 2025

MIRIAM V. BAIRD, CSR 11893
OFFICIAL U.S. DISTRICT COURT REPORTER
411 WEST FOURTH STREET
SUITE 1-053
SANTA ANA, CALIFORNIA 92701

# **A P P E A R A N C E S**

**ON BEHALF OF THE PLAINTIFF,**    MONICA E. TAIT
**UNITED STATES OF AMERICA:**    U.S. DEPARTMENT OF JUSTICE
    U.S. ATTORNEY'S OFFICE
    MAJOR FRAUDS SECTION
    312 NORTH SPRING STREET
    12TH FLOOR
    LOS ANGELES, CALIFORNIA 90012


**ON BEHALF OF THE DEFENDANT,**    FEDERAL PUBLIC DEFENDER
**BERNHARD EUGEN FRITSCH:**    BY: REBECCA M. ABEL
    JAMES S. THREAT
    321 EAST SECOND Street
    LOS ANGELES, CA 90012

UNITED STATES DISTRICT COURT

LOS ANGELES, CALIFORNIA; MONDAY, JUNE 2, 2025; 8:42 A.M.

---

THE CLERK:  Calling CR17-00520-DSF: USA v. Fritsch.

Counsel, please state your appearance for the record.

MS. TAIT:  Good morning, Your Honor.  Monica Tait for the United States.

MR. THREATT:  Good morning, Your Honor.  James Threatt, Rebecca Able, and Jonathan Aminoff on behalf of Mr. Fritsch, who is not present.

THE COURT:  Any information from Mr. Fritsch?

MR. THREATT:  Your Honor, we have been in very recent contact with Mr. Fritsch up and through Friday.  We have not heard from him this morning, which is just unlike him to be honest.  I think the Court knows that he is usually on time and is very responsive.  We did speak to his other attorney Mr. Greenbeck a short while ago who was in contact with Mr. Fritsch throughout the weekend.  So he's just trying to get a hold of him right now.  We've also made a few calls trying to get a hold of him and calls some calls to family members.

We would ask the Court, if possible, to either put this over a couple of days and continue to let us try to get

UNITED STATES DISTRICT COURT

4

a hold of him, because I -- I am concerned that there might be some issue -- a non-nefarious issue as to why he is not here this morning.  Given all of the contact that we've had with him, all of the preparation that he's done for the hearing, it just doesn't seem consistent or likely that he has intentionally not shown up today.

THE COURT:  You guys have done such a great job for Mr. Fritsch.  It's unfortunate that he doesn't appreciate you.

Ms. Tate?

MS. TAIT:  Your Honor, the government this morning filed something that I just received late last night.  I apologize for the late filing.

THE COURT:  That's all right.  I've read it.

MS. TAIT:  You've read it, Your Honor.  So Mr. Fritsch is again in violation of his conditions of release by transferring the LLC again to another party who is outside of the reach of the Court, because this other party apparently resides in the United Kingdom.  So it seems that -- I suspect Mr. Fritsch has fled.  I request that the Court pursuant to Rule 46(f), declare the bail forfeited.

MR. THREATT:  Your Honor, respectfully -- oh, I'm sorry.

THE COURT:  Yes.

MR. THREATT:  I think it's a little bit premature

for that.  We don't know why he's not here.  He has shown through his performance over the last several years that he's not inclined to flee.  He has showed up for every day of this trial.  He's actively worked with us to prepare for this hearing today.  He has had ample opportunity to leave if that's what he wanted to do, Your Honor.  He has expressed very clearly that he doesn't.  My phone is ringing.  If the Court --

THE COURT:  Go right ahead.

MR. THREATT:  I believe this is his son calling.  Can I step out?

THE COURT:  Absolutely.

MR. THREATT:  Thank you, Your Honor.

(Brief pause in the proceedings)

MR. THREATT:  Thank you for your patience, Your Honor.  I just spoke with his son.  His son was last in contact with him on Saturday.  Report said nothing was awry.  Does not think his father has fled.  I guess we just don't know very much right now, Your Honor. We are just -- I think we're all a little surprised.  This is very unlike him.

So, you know, if the Court would give us a day, a couple of days just to try and find him.  I think if the worst has happened, a few days' continuance for us to try to confirm that is not going to change anything, I wouldn't have thought from the government's perspective, at least --

THE COURT:  I don't know if they'll go out and look for him right now.

MR. THREATT:  I mean -- maybe the Court issues a bench warrant, but doesn't make affirmative finding on the government's motion, and we just continue this hearing for a couple of days if we want give the government that hour to find him.

THE COURT:  Well, I was going to have him detained anyway subject to what I hear here.  So I -- it doesn't necessarily make any sense.

MR. THREATT:  I see.  One of the problems, Your Honor, is -- is -- you know, we've received this recent information from the government.  I would appreciate an opportunity to discuss that with Mr. Fritsch, because I, frankly, don't know anything about it.  I don't know if it's genuine.  We're obviously a little bit puzzled by it.  I'm sure there's an explanation.

THE COURT:  I'm sure there's an explanation.  Whether it will be a valid one or not --

MR. THREATT:  Of course.  Of course.  I mean, with respect to the underlying merits of the motion, Your Honor, you know, obviously, it's our burned to establish that he's not a flight risk and he's not a danger to the community.  The Court very graciously allowed him to remain on bond after he was convicted in this courtroom of one of the two counts.

I think he has demonstrated that he -- I mean, assuming today -- a difficult argument to now make given that he's not here for what I suspect are innocent reasons.

Assuming that to be the case, I think he has largely demonstrated through his conduct that he's not a flight risk.  You know, I recently got an opportunity to speak to his probation officer when we were asking for approval for him to travel to Arizona for his son's graduation.  His probation officer, Supervising Officer Davona Gardener informed us she had no concerns whatsoever about him traveling.  We were able to reach a stipulation with the government about that travel, because he hasn't attempted to flee.  He -- I mean, he's had so many opportunities.  He never has because he obviously believes in his case.  You know, he elected to go to trial and fight his case because he believes in his innocence.  We know that he is looking forward to an appeal and challenging the merits of that conviction because he believes in his innocence.

So this is not a person who is inclined to run from justice, because he believes he is on right side of justice.  The fact that this case has gone on for such a long time, and he has always come back despite having foreign citizenship, despite traveling internationally, yet he continues to come.  Even when the government describes it as irrational for him to continue to come, that's what he does because he's not

trying to evade justice.

So I don't think this man is a flight risk. I think he's demonstrated that through his actions. With respect to danger to the community, his life has been under a microscope for a long time. We are not seeing this person committing fraud. We're not seeing him commit crimes. I understand there's some issues --

THE COURT: Up until the recent filing. I understand you haven't had a chance --

MR. THREATT: Yes.

THE COURT: -- to discuss with him.

At the risk of inconveniencing all of you, if you want me to wait until 9:30 to see if anybody hears from him.

MR. THREATT: Thank you.

THE COURT: I will do that. Otherwise, I think the approach would be for me to hold the hearing, make my findings, and then decide what I'm going to do about his absence.

MR. THREATT: Understood.

THE COURT: See you at 9:30.

MR. THREATT: Thank you, Your Honor.

(Recess from 8:53 a.m. to 9:32 a.m.)

THE COURT: Everyone is back. You can have a seat.

Do we have any further information about Mr. Fritsch's whereabouts?

MR. THREATT:  Thank you, Your Honor.  We did have an opportunity to speak to his fiancee and his son again.  His fiancee reported that she was with him last night in Malibu at the house.  She understood that he would be here.  They talked about this hearing.  She thought he was here.  She doesn't know where he is now.  She was in Westlake when I talked to her and was heading out the door to go and check on him at the Malibu house.  She told me it would take her about 45 minutes to get there.  We spoke at about 9:10.

I also spoke to his son who called the police to do a wellness check.  I haven't heard back anything of the results of that wellness check if it has already happened or what.  As of right now, I unfortunately don't have an update besides we still haven't been able to get a hold of him.

THE COURT:  Ms. Tait?

MS. TAIT:  I don't know where he is, Your Honor.  That's all I can say for the United States.  The government does request again that the Court -- pursuant to Rule 46(f), the Court must declare the bail forfeited if a condition of bond is breached.  I believe that today certainly a condition of his bond has been breached.  Pursuant to that same provision, the other side or sureties have the ability and the Court has the ability to set it aside if in the future it appears that justice does not require bail forfeiture.  The reason I'm asking for bail forfeiture now is because for one

thing, the Court ought to do it because it's happened. There's been a breach, and also because of the situation with the real estate and the situation with the bankruptcy.

So if the Court does order it forfeited, I think I will be in a better position to talk to the bankruptcy trustee about the Court's interest in that property. In light of not only what has happened today, but also what the shenanigans this weekend that are reflected in what the government filed this morning, which all these -- this agreement that Mr. Fritsch entered into. He did so after he filed and signed the declaration that he sent to the Court late last week.

So in light of those machinations, I would request the ability to start taking action to preserve the Court's interest in this property because it does appear that the defendant has all intent to try to wrest away this property, perhaps, from the bankruptcy proceeding and certainly from the victims in the case as we move forward to sentencing.

THE COURT: From the victims?

MS. TAIT: In view of a restitution, a potential restitution order.

THE COURT: Okay. Anything further?

MR. THREATT: Nothing further, Your Honor.

THE COURT: All right. Well, obviously, it can be undone if it's appropriate. I certainly hope that

Mr. Fritsch is both still available and nothing untoward has happened to him.  I'm going to revoke the bond and forfeit the bond.  I will issue an arrest warrant, bench warrant, whatever is appropriate, check in boxes whatever form we need.  I don't know if I should hold that until we hear from the police.  Apparently -- who knows how long it will take him to check his house.

Do you have any position?

MS. TAIT:  Your Honor, I would just recommend that the Court do it now.

THE COURT:  It will probably take them that long to process it anyways.  I will issue the warrant.  I do find that Mr. Fritsch has breached the conditions of his bond.  I think the government should make a formal request for forfeiture, although I have forfeited it based on your request here today, but I think we need -- probably need something in writing so that you can --

MS. TAIT:  Yes, Your Honor, I'm seeking --

THE COURT:  Do you want me to do anything further by way of the hearing today?  Did you want me to make any findings or just leave it at --

MS. TAIT:  Well, Your Honor, I think we're all here.  I would request that the Court make whatever findings it would make.  Could I be heard just briefly on the declaration that Mr. Fritsch filed on the substance of the

government's initial motion?  Just real briefly.

THE COURT:  Yes.  I noted it was signed on the 29th.

MS. TAIT:  Right.

So in Mr. Fritsch's declaration, which is in opposition to the government's motion to revoke bond that we filed more than a month ago, I just wanted to point out that Mr. Fritsch's declaration makes no protestations of innocence with respect to the actions that he took in transferring the real estate from himself to an LLC, back to himself, and back to an LLC, the last act which he did in May of 2023 and has left the title in that LLC, apparently, maybe to this day unless something has been recorded that we don't know about.

He didn't in his declaration say, Your Honor, I had no idea that I couldn't do that.  He didn't say that at all. I think the silence speaks volumes.  I think he did know he shouldn't have done that.  He decided to just engage in self-help because perhaps -- I don't know why.  He decided fully to engage in self-help.

Not only that, with respect to resources, the declaration provides no explanation for what Mr. Fritsch has done with the remaining approximately $746,000 that he had in in or about early 2023 after spending -- after paying off the Deutsche Bank loan, paying off some prepaid interest, and paying for attorneys fees.  So he received 5.5 million from

this company Jayco out of the equity of 3229 Rambla. $746,000 is unaccounted for, which is a very large sum indeed.

Finally, I think that the defense's position is that the transfers between Mr. Fritsch, the LLC, back to Mr. Fritsch, back to the LLC amount to no harm and no foul. But I think that the filing that I made this morning shows just how there is potential foul, because by transferring it again -- by transferring it to an LLC, one can secretly transfer the ownership interest of the LLC to a third party without necessarily -- without recording that transfer on the public record of the county. Apparently, Mr. Fritsch, according to what he sent his cousin, that's exactly what he's tried to do quietly behind the scenes transfer an interest in the LLC to this foreign person. I don't know who the person is. That is exactly the evil of putting a property that is securing one's personal bond in the name of a corporation. You can -- you can then transfer an interest in the corporation and maybe no one will know about it. Unless as luck would have it, the government happen to be in contact with the person who you sent the documents to.

That is -- again, these actions transferring the LLC to the UK party is yet another violation of his conditions because that LLC is obviously worth more than $1,000. With that, Your Honor, would I submit.

THE COURT:  Anything from the defense?

MR. THREATT:  Just very briefly, Your Honor.  I mean, I think one of the issues here is that Mr. Fritsch has an obligation to this Court to try to maintain the property to the best of his ability.  To the extent that he owed on this loan to Deutsche bank, he was clearing that loan.  That has not impacted the Court's lien on the property.  The Court's lien has always remained the second lien on the property.  That interest has not been affected by this at all.

To the extent he had to, so to speak, move things around to pay off that loan so it wouldn't be in default and then take out a new one, that's all he has done.  I understand that maybe there are technical violations here.  I think the bigger violation would have been if he let that loan go into default and then defaulted on the property, which would have affected the Court's lien on the property.

So to maintain that lien, to maintain what he owes to the Court, he sort of did what he had to do.  Okay.  Maybe he should have walked us through those steps as he did them.  I don't know, but I think the important thing is that he has maintained the Court's interest in this property as he was obligated to do.

With respect to all of the stuff that we're finding out about now, you know, I just don't have a response at this

15

point, because I need to work through that with my client and understand.  That's the thing, you know, when Mr. Fritsch is given an opportunity to explain, there are legitimate non-nefarious reasons for the things that he does.  So I would ask the Court to just not hold these new things against him for the time being until we have some kind of clarity.

Thank you, Your Honor.

THE COURT:  All right.  Thank you.  Obviously, I've reviewed all of the documents now, including the declaration and the documents submitted by the government yesterday.  In reviewing the file, I did note that I am not sure the communication from Mr. Fritsch during the brief period of time when had he was representing himself to the Court and to the government made its way to the docket.  I don't think you can figure that out, Ms. Tait.

MS. TAIT:  Perhaps not.  There was a communication in December.  I think I attached an exhibit from Ms. Kim, the prior clerk, telling us about it, but we never saw that communication.  So there are some potential communications that we haven't seen.  Is that what the Court is asking?

THE COURT:  No.  I'm referring to -- I don't know how to characterize his declaration.  It was, do you know what I'm talking about?

MR. THREATT:  I know exactly what you're talking about, Your Honor.

THE COURT: The one that said be to be clear --

MR. THREATT: Yes. There was, I believe, a follow-up through -- there was a Friday hearing where he was allowed to go pro se. He sent an e-mail that night. I believe there was another one over the weekend. We had intended to sort of batch all of those documents and file them as an exhibit. I thought we did. I will go back and double-check and make sure we included everything that we intended.

THE COURT: Please do. I think for various reasons that needs to be --

MR. THREATT: Yes, Your Honor.

THE COURT: -- obviously, on --

MR. THREATT: I will check that today.

THE COURT: Okay. Thank you.

As applicable in this case, 18 USC Code Section 3143 states, that the Court shall order Mr. Fritsch to be detained unless the Court finds by clear and convincing evidence that he is not likely to flee or pose a danger to the safety of any person or the community if released. He has the burden. The Court incorporates the information and the facts established in the government's papers, including the recent filing, although I recognize that defense counsel has not yet had an opportunity to communicate with Mr. Fritsch about that. I'm assuming Mr. Fritsch did not

advise the defense before doing that.

I have considered all of the defense submissions and argument.  Mr. Fritsch was convicted of fraud and facing a significant sentence.  As we all now know, he is a German national.  Germany will not extradite German citizens.  Over time, the total security and conditions were reduced in large part because a substantial secured amount apparently remained in the residence, plus an additional relatively small amount that was secured.  And an even smaller amount that was unsecured backing up the bond.

As the parties note, even before the information provided yesterday, there have been several attempts to sell the property that now provides security.  I'm not sure the public defender was made aware of the circumstances surrounding one of those attempts, as the situation involved one of Mr. Fritsch's series of counsel asking to be relieved for personal reasons.  She was private counsel.  Another private firm sought to replace her, but only if several million dollars was released for their fees with the expectation that that money would come in through the sale of the property.  That might have been the time that the Court set the terms for sale.  The government raised substantial questions about the legitimacy of the second proposed buyer.  That sale never went through.  It was at that point the public defender was eventually appointed.

I do have some concerns about the information submitted to the Court in camera, but I won't put that in the record here. I agree with the government that the process surrounding the Jayco loan is concerning, J-a-y-c-o, to say the least. Defense counsel's speculation does not provide any comfort. It just does sound strange. The prospect of getting any money through the bankruptcy proceeding to offer us a bond does not seem particularly good, but I know Ms. Tait and her office will make its best efforts.

In any event, it -- I'm saying this because this is what I plan to say with him here. In any event, it would take time and would not have, in my view, been an appropriate reason to deny the motion for detention, because it would have required the government to spend a potential amount of public funds if he fled.

At this time, I can't -- at this time, I still can't conclude that the Rambla Pacifico property provides any realistic security for the bond, because if he's fled, it obviously didn't. In addition, we now have another effort that appears to be an effort on his part to sell the property.

As the government noted, Mr. Fritsch had not supplied the information necessary for the Court even to consider the proposed home of his mother-in-law. The Court generally does not find unsecured bonds to be appropriate,

certainly, in this type of case.  So if he actually has fled now, he's not endangering apparently his mother-in-law's property or any unsecured bonds.  Real property is only viable security if the Court is confident that the defendant cares enough about the surety that he won't flee and cause the surety to lose the property.

I was referring at that point to, I guess, it's Dr. Montgomery.  That's the same person who posted his property.

MS. TAIT:  Yes.  Dr. Montgomery posted his own property to about $135,000.

THE COURT:  And then sued Mr. Fritsch.

MS. TAIT:  Sued Mr. Fritsch for recovery of money lent to Mr. Fritsch many years after posting the property.

THE COURT:  Right.  In light of that suit, I suspect there was a rift in the relationship.  I was going to suggest that Mr. Fritsch wouldn't be as concerned about having his cousin lose the property, as he might have been when it was allegedly posted.  Perhaps, this information that was provided to Dr. Montgomery's lawyer was an effort to show that he could reimburse his cousin.  I guess, that's just speculation.

As the government pointed out, I did not receive any support for the proffered sureties.  As the government notes, the Court had concerns about Mr. Fritsch's travel and

denied several requests that he be allowed to travel to Germany.  The Court's concern -- I was going to say was significantly greater now thinking he would be sitting there.  Now, obviously it is even greater than it was before now that he's been convicted and is facing a significant sentence.

Obviously, Mr. Fritsch can't rebut the government's evidence that he has the resources to flee by referring to a document the government does not have access to.  Based on information in the government's papers, Mr. Fritsch may not have been truthful with the Court in his filing.  In any event, it hardly takes any resources at all to flee.  There are so many ways to do that.  Interestingly, he had two people or entities apparently willing to provide up to $10 million for his defense.  Now has a lawyer.  I was wondering if he was going to appear.  He hasn't.  He has a lawyer who apparently was not being paid for working for him, but did file a declaration.  I think that might have been separately.  I'm not sure if it was in connection with this proceeding or not.

Although Mr. Fritsch made all of his appearances while in trial, he was not entirely trustworthy, again, even before today's incident.  As recently as the Friday before the Tuesday trial, he insisted that he be allowed to represent himself.  At that time, he represented that he would be prepared to start the trial as scheduled, but six or

seven hours later he e-mailed the Court and the government retracting that position.  He certainly does not believe he should have been found guilty of the charge.  That's his position conveyed by his lawyers and in the declaration.

Considering the attitude that he's shown in some of his e-mails and considering the evidence, I conclude that I cannot rely on Mr. Fritsch's representations.  The cases the the defendant cites are not persuasive because Mr. Fritsch has failed to meet his burden to show by clear and convincing evidence that he will not flee.  The Court orders him detained.  As I said, the bond is revoked and forfeited.  A warrant will issue.

Counsel, if you are able to communicate with your client, you should certainly let him know.  Perhaps, contact the Court.  We can figure out what to do about the warrant. I will leave that to you, but if he turns himself in without any problem, that would be more efficient.

Anything else?

MS. TAIT:  Nothing from the government.  Thank you, Your Honor.

MR. THREATT:  Nothing from the defense, Thank you, Your Honor.

THE COURT:  All right.  Thank you.

(Proceedings concluded at 9:55 a.m.)

CERTIFICATE

UNITED STATES DISTRICT COURT

I HEREBY CERTIFY THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY RECORDED PROCEEDINGS IN THE ABOVE MATTER.

FEES CHARGED FOR THIS TRANSCRIPT, LESS ANY CIRCUIT FEE REDUCTION AND/OR DEPOSIT, ARE IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.


/s/ Miriam V. Baird                06/23/2025

MIRIAM V. BAIRD                          DATE
OFFICIAL REPORTER