# SentEx L

**TRANSCRIPT - EXHIBIT 520**

| SPEAKER | TRANSCRIPTION |
|---|---|
| SA AUSTIN | That's why I'm asking. What-what is US Mastertec? |
| FRITSCH | US Mastertec is a uh technology service provider. |
| SA AUSTIN | Okay. |
| FRITSCH | That we have been using. |
| SA AUSTIN | Okay. |
| FRITSCH | For many years. |
| SA AUSTIN | Okay. |
| FRITSCH | To develop product. |
| SA AUSTIN | Okay. Um, so it's a supplier. |
| FRITSCH | Yeah. |
| SA AUSTIN | Okay. Uh, is it an arm's length supplier? Do you know who owns it? |
| FRITSCH | Um, I don't know the owner. |
| SA AUSTIN | Okay. |
| FRITSCH | I uh just um know that we have used the company for many years. |

**TRANSCRIPT - EXHIBIT 521**

| SPEAKER | TRANSCRIPTION |
|---|---|
| SA AUSTIN | Ca-ca-can you tell me more about what uh what US Mastertec does for you I mean I know you told me it's a-it's a technology? |
| FRITSCH | Yeah, so that's a actually. |
| SA AUSTIN | Okay. |
| FRITSCH | So what we do here is we are developing a technology. |
| SA AUSTIN | Mmm hmm. |
| FRITSCH | That [U/I]. |
| SA AUSTIN | Okay. |
| FRITSCH | And like building uh skyscraper, we're basically building the architecture. |
| SA AUSTIN | Mmm hmm. |
| FRITSCH | And drawing the technology how it should work and then we either develop it here. |
| SA AUSTIN | Mm hmm. |
| FRITSCH | With our own developers or we are giving to a developing company. |
| SA AUSTIN | Okay. |
| FRITSCH | And uh US Mastertec is one of them that isdeveloping technology for us [U/I] specifications. |
| SA AUSTIN | Okay. |
| FRITSCH | Um, spec sheets and everything |
| SA AUSTIN | Okay um. |
| FRITSCH | And then basically develop along those uh specifications. |

**TRANSCRIPT – EXHIBIT 522**

| SPEAKER | TRANSCRIPTION |
|---|---|
| SA AUSTIN | Does uh US Mastertec do anything other than tech development? |
| FRITSCH | I don't know what else they do. |
| SA AUSTIN | Okay, I-I didn't mean other clients, but do-do they do anything other than tech development for Star Club? Like do they do marketing or accounting or, you know, uh. |

**TRANSCRIPT – EXHIBIT 524**

| SPEAKER | TRANSCRIPTION |
|---|---|
| SA AUSTIN | If that's your decision. Um, I guess...do…so um is there any connection between this 3229 Rambla Pacifico and Star Club? |
| FRITSCH | Yeah. |
| SA AUSTIN | Okay, can you describe the connection? |
| FRITSCH | Uh no, StarClub is uh actually is getting invoiced from 3229, and we're paying um bills for events that we're doing there. |
| SA AUSTIN | Did you have a guess about how mmm [OV]. |
| FRITSCH | We also um I-I see…so 3229 [OV] |
| SA AUSTIN | Yeah. |
| FRITSCH | Is um also being used as a-as an office. |
| SA AUSTIN | Okay. |
| FRITSCH | But since we have this office more and more, we don't [U/I]. |
| SA AUSTIN | Okay. What-what office work is performed at 3229 Rambla? |
| FRITSCH | Uh, programming. |
| SA AUSTIN | Which programming performed? How many employees work there? |
| FRITSCH | Uh, right now? |
| SA AUSTIN | Yes. |
| FRITSCH | Right now is none. |

# SentEx M

AO 91 (Rev. 11/11)  Criminal Complaint (Rev. by USAO on 3/12/20)       ☐ Original  ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| United States of America<br><br>v.<br><br>LUCINDA JANE WEIST MANERA,<br><br>Defendant(s) | Case No.  2:25-mj-05995-DUTY |

<table>
<tr><td></td></tr>
<tr><td><b>FILED</b><br>CLERK, U.S. DISTRICT COURT</td></tr>
<tr><td>September 26, 2025</td></tr>
<tr><td><b>CENTRAL DISTRICT OF CALIFORNIA</b><br>BY: _____CLD_____ DEPUTY</td></tr>
</table>

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of no later than May 31, 2025 and continuing through at least August 11, 2025 in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371 | Conspiracy |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
*/s/ Erin Kim*
*Complainant's signature*

ERIN KIM, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date:        September 26, 2025  at 6:16 p.m.

_____
*Judge's signature*

City and state:   Los Angeles, California

Hon. Jacqueline Chooljian, U.S. Magistrate Judge
*Printed name and title*

AUSA: Monica E. Tait, x2931

## AFFIDAVIT

I, ERIN KIM, being duly sworn, declare and state as follows:

### I.  INTRODUCTION

1.   I am a Special Agent ("SA") with the Federal Bureau of Investigation ("FBI") and have been so employed since February 2023.  I am currently assigned to the Los Angeles Field Office, Complex Financial Crime Squad, where I primarily investigate corporate fraud, investment fraud, and securities fraud. I received approximately 18 weeks of formal training in financial analysis, interviewing, surveillance, and other investigative techniques at the FBI Academy in Quantico, Virginia. In September 2024, I also attended a multi-day Financial Crimes 101 Training sponsored by the FBI Economic Crimes Unit. I hold a Bachelor of Arts in Economics and Master of Education in Teaching Mathematics.

2.   In addition to my formal training and personal experience, I have learned from and worked alongside numerous senior FBI agents with years of experience in various criminal investigations including, but not limited to, corporate fraud, wire fraud, and securities fraud. As a result of my training and experience in investigating fraudulent schemes, I have become familiar with the types of records and documents that individuals and entities use to perpetrate their schemes and have participated in the execution of search warrants for digital devices of individuals involved in fraudulent schemes.

## II. **PURPOSE OF AFFIDAVIT**

3.    This affidavit is made in support of a Criminal Complaint against LUCINDA JANE WEIST MANERA for violation of 18 U.S.C. § 371, that is, conspiracy to obstruct justice in violation of 18 U.S.C. § 1503(a).  I understand based on review of the Ninth Circuit's jury instructions website, https://www.ce9.uscourts.gov/jury-instructions/model-criminal, that the elements required to prove a violation of 18 U.S.C. § 371 are:   first, there was an agreement between two or more persons to commit a violation of 18 U.S.C. § 1503(a); second, the defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.  From the same source, I understand that the elements required to prove the underlying crime of obstruction of justice are:  first, the defendant influenced, obstructed, or impeded, or tried to influence, obstruct, or impede the due administration of justice; and second, the defendant acted corruptly with the intent to obstruct justice.

4.    The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the Complaint and does not purport to set forth all of my knowledge of or investigation into this matter.  Unless specifically indicated otherwise, all

2

conversations and statements described in this affidavit are related in substance and in part only, all amounts or sums are approximate, and all dates and times are on or about those indicated.

### III. <u>STATEMENT OF PROBABLE CAUSE</u>

5.    Based on the evidence set forth below, there is probable cause to believe MANERA conspired with Bernhard Eugen Fritsch ("Fritsch"), a convicted defendant then on release, to corruptly obstruct and impede, or endeavor to obstruct and impede, the due administration of justice in connection with Fritsch's criminal case by helping Fritsch flee the United States to avoid (a) being detained pending sentencing in Fritsch's criminal case and (b) serving any future sentence imposed in Fritsch's criminal case.

### A.    The Guilty Verdict, Hearing on Remand, and Fritsch's disappearance

6.    On April 3, 2025, in the Central District of California before the Honorable Dale S. Fischer, United States District Judge, a jury returned a verdict finding Fritsch guilty of Count One of the Indictment against him in the matter <u>United States v. Fritsch</u>, CR 17-520 DSF ("Fritsch's criminal case"), which charged him with wire fraud in violation of 18 U.S.C. § 1343.  (Fritsch was acquitted of Count Two, the other Count on which he was tried.)  Fritsch's wire fraud related to his solicitation of millions of dollars from investors into the company he ran, StarClub.  I am one of the case agents on the <u>Fritsch</u> matter.

3

7.    I am aware that at the time of the trial, Fritsch was released on conditions pursuant to 18 U.S.C. § 3142(c).  I am also aware that on April 3, 2025, after the verdict was read, the government moved for immediate remand of Fritsch into custody.  Judge Fischer requested briefing from the parties on the issue, and did not decide the motion right away; Fritsch thus remained on release at that time.  According to a partial transcript of the proceeding that day I have reviewed (from the point of the reading of the verdict), Judge Fischer addressed Fritsch directly and said, "Mr. Fritsch, I'm expecting you to be on your honor and not leave the jurisdiction" to which Fritsch responded, "[a]bsolutely, Your Honor."

8.    Based on my review of the docket for the criminal case, and based on information provided to me by Assistant United States Attorney ("AUSA") Monica E. Tait, I learned that the parties briefed the issue of whether Fritsch should be remanded into custody, and that a hearing was scheduled for June 2, 2025, at 8:30 a.m.  According to the docket, Fritsch was then scheduled to be sentenced on October 20, 2025.  I have also reviewed a Declaration filed with the Court May 30, 2025, on Fritsch's behalf at docket number 534, in support of his continued release from custody.  The declaration was dated May 29, 2025.  Among other things, Fritsch stated, "I remain committed to appearing for sentencing as scheduled. I am not fleeing. I am not hiding. I am not evading responsibility. I am here."

4

9.    I have reviewed the reporter's transcript of the June 2, 2025 hearing.  Fritsch did not appear.  Fritsch's attorneys who were present in court stated they did not know his whereabouts.  After taking a break until approximately 9:32 a.m. to allow more time for Fritsch to appear, his counsel stated as follows about counsel's contact with Fritsch's "Fiancee":

> We did have an opportunity to speak to his fiancee and his son again. His fiancee reported that she was with him last night in Malibu at the house. She understood that he would be here.  They talked about this hearing. She thought he was here. She doesn't know where he is now. She was in Westlake when I talked to her and was heading out the door to go and check on him at the Malibu house. She told me it would take her about 45 minutes to get there. We spoke at about 9:10.

10.    Judge Fischer made several oral rulings in the case. Among other things, Judge Fischer ordered Fritsch's bond revoked and forfeited, stated she would issue a bench warrant for him, and ordered Fritsch detained pursuant to 18 U.S.C. § 3143(a)(1). On June 3, 2025, Judge Fischer issued a warrant for Fritsch's arrest.

11.    Based my review of an interview report, I know that on June 2, 2025, at approximately 1:50 p.m., FBI Special Agent Kristi Hamada, my co-case agent on the Fritsch matter, spoke by telephone with United States Probation and Pretrial Services ("USPO") Officer Devona Gardner.  Among other things, Officer Gardner indicated as follows:

a.    Officer Gardner was assigned to supervise Fritsch while on release in his criminal case, along with another officer (Officer Ibanez) who was responsible for location monitoring.

b.    Fritsch was then enrolled in the USPO's Smartlink location monitoring program.

c.    Officer Gardner indicated that on June 2, 2025, at about 10:34 a.m., she caused the Smartlink technology to alert Fritsch that he was required to respond.  Fritsch was required to respond with a biometric response, such as a photograph of himself.  As of the time SA Hamada spoke to the officer on June 2, 2025, Fritsch had not responded.  Officer Gardner said this was unusual, because Fritsch reliably responded rapidly when she used this technology in the past throughout her supervision of him since approximately 2021.

d.    As of June 2, 2025, Officer Gardner had not been able to locate or reach Fritsch.

**B.    MANERA Helped Fritsch Leave the United States**

12.   In an application to the Federal Emergency Management Agency ("FEMA") for benefits submitted by MANERA in her true name on or about January 10, 2025, MANERA listed her phone number as 310-993-3555 and her email address as lumanera@icloud.com.  MANERA's claim indicated she was the primary FEMA claimant for relief due to damage to what I know to be Fritsch's residence at 3229 Rambla Pacifico, Malibu, California 90265.  MANERA's application listed Fritsch as a co-resident of the property.

13.   Records I reviewed, obtained via legal process from Verizon, indicate that the subscriber to 310-993-3555 is Lucinda W Manera.

6

14.  On June 4, 2025, SA Hamada and I contacted MANERA at telephone number 310-993-3555.  During the interview, MANERA stated as follows:

a.    MANERA last saw Fritsch in person on June 1, 2025 at approximately 6:00 p.m. at her residence, located in Westlake Village, California (within this district).  This was the last time MANERA had spoken to Fritsch.  MANERA thought Fritsch may have been nervous about Fritsch's court hearing on June 2, 2025.  Fritsch's defense counsel advised Fritsch not to drive to the court hearing in case Fritsch was remanded.  (I understand this to mean that counsel advised Fritsch not to drive his own car to the hearing.)

i.    Based on the consistency between the above information and defense counsel's statements at the June 2, 2025 hearing quoted above, I believe MANERA is the "fiancee" to whom defense counsel was referring.  (As further described below, the statements to Fritsch's counsel while the hearing was paused to allow more time to locate Fritsch were false, and I believe MANERA made them intending to deceive defense counsel, and by extension, the Court, concerning Fritsch's true whereabouts.)

b.    On June 2, 2025, after Fritsch failed to appear at the court hearing, MANERA conducted a welfare check at Fritsch's residence at 3229 Rambla Pacifico, Malibu, California 90265.

c.    On June 4, 2025, MANERA contacted Verizon, the carrier of Fritsch's cellular telephone for telephone number 310-889-8880.  After Verizon advised MANERA there was no

7

activity on Fritsch's cellular telephone, MANERA requested Verizon deactivate Fritsch's wireless plan.

d.    MANERA was not aware of any other telephone numbers being used by Fritsch.

e.    MANERA was not aware of Fritsch's whereabouts.

15.    Based on interviews SA Hamada conducted with INDIVIDUAL 1[1] (described below) and my review of financial records, non-content information obtained via legal process from one or more providers of electronic communication services, and other records, I have learned the following:

a.    On or about May 31, 2025, INDIVIDUAL 1 was contacted by a friend.  According to INDIVIDUAL 1's friend, a person was seeking assistance in getting out of the United States.  That same day, INDIVIDUAL 1 was ultimately introduced to a person identified to INDIVIDUAL 1 as "Bernhard Fritsch," during a telephone call.

b.    Fritsch told INDIVIDUAL 1 Fritsch was in trouble and Fritsch and MANERA had to leave the United States.  Fritsch was ultimately trying to get to Germany.  MANERA was planning to join Fritsch in Germany once Fritsch arrived in Germany.

i.    I know from my participation in this investigation that Fritsch is a citizen of Germany.  I also have reviewed a declaration filed in Fritsch's criminal case from a

---

[1]    Based on my review of criminal history information, INDIVIDUAL 1 has a 1999 conviction for violation of Cal. Vehicle Code 23152(b) (driving under the influence).  He also has a 1999 conviction for reckless driving (violation of Cal. Vehicle Code 23103).  The government has no agreement with INDIVIDUAL 1 to cooperate in exchange for leniency.

8

Department of Justice attorney responsible for extradition requests involving Germany stating that Germany will not extradite its nationals.

c.    INDIVIDUAL 1 offered to help Fritsch get to Mexico, where Fritsch would stay with a friend of INDIVIDUAL 1, in Mexico.

d.    On May 31, 2025, during a telephone call between INDIVIDUAL 1 and Fritsch with MANERA, MANERA offered to send INDIVIDUAL 1 $10,000 for INDIVIDUAL 1's assistance with getting Fritsch to Mexico.  MANERA stated MANERA could only send a daily maximum of $3,500 using Zelle.

e.    On June 1, 2025, per Fritsch's instructions, INDIVIDUAL 1 met Fritsch and MANERA at MANERA's residence in Westlake Village.  While in the residence and in MANERA's presence, Fritsch stated Fritsch had to cross the United States and Mexico border by 6:00 a.m., before the courts opened on June 2, 2025.  Fritsch stated Fritsch had a court date and may get locked up, which Fritsch could not risk.  INDIVIDUAL 1 explained step-by-step to MANERA and Fritsch how Fritsch and INDIVIDUAL 1 would travel to Mexico.

f.    MANERA stated she had two phones, including a burner phone.

g.    Fritsch and INDIVIDUAL 1 left MANERA's residence on June 1, 2025.  After meeting with another person in Arizona ("INDIVIDUAL 2"), INDIVIDUAL 2 drove Fritsch and INDIVIDUAL 1 across the border to Mexico on June 2, 2025.

9

16.   Pursuant to legal process, Early Warning Services, LLC provided Zelle records for MANERA and INDIVIDUAL 1.  I have reviewed the records and identified the following:

a.   A "token" is the email or mobile phone number used to identify an enrolled user and associates that user with their enrolled account.  Each token is unique to one user and one financial institution within the Zelle network.  A user may have a dual token, meaning the user can have an email activated on the bank application and a phone number on the Zelle application.  Both the email and the phone number will be linked together.

b.   MANERA had two tokens associated with her active Zelle profiles, including mobile phone number 310-993-3555 and email address lumanera@icloud.com.

c.   On May 31, 2025, MANERA sent a total of $3,500 to INDIVIDUAL 1 via Zelle in two transactions.

d.   Between June 13, 2025, and July 10, 2025, MANERA sent a total of $5,000 to INDIVIDUAL 2 via Zelle as follows:

| Transaction Date | Payment Amount | Payment Memo |
|---|---|---|
| June 13, 2025 | $1,000 | DEPOSIT CUSTOM FURNITURE |
| June 19, 2025 | $1,200 | None |
| June 24, 2025 | $900 | FINAL FURNITURE DESIGN |
| July 5, 2025 | $950 | FURNITURE DESIGN REVISIONS |
| July 10, 2025 | $950 | FINAL FURNITURE REVISIONS |

10

17.  Wells Fargo records for an account in MANERA's true name indicate that she made three later Zelle transfers to INDIVIDUAL 2:  On July 28, 2025, for $700 ("Design #2"); on July 31, 2025, for $500 ("side table designs"); and on August 11, 2025, for $700 ("furniture design #3").Records produced by Wells Fargo for an account in the true name of INDIVIDUAL 2 include a March 13, 2023 signature card listing INDIVIDUAL 2's employer as a company with "drywall" in the name.  Accordingly, I believe that MANERA's payment memos to INDIVIDUAL 2 attempt to purposely conceal the true reasons for her payments to INDIVIDUAL 2.

18.  Records the FBI obtained from AT&T indicate that on May 31, 2025, the phone number 805-413-6683 was activated and subscribed to "Lucy Weist," which I recognize to be a variant of MANERA's true name.  The contact email address for the account is MANERA's true email address, lumanera@icloud.com.

**C.    MANERA Recently Traveled to Germany**

19.  California DMV records indicate that on June 16, 2025, MANERA transferred to Carmax (which I know to be a purchaser and seller of used cars) a 2006 Mercedes then registered to her, for the "sell price" of "029000," which I understand based on training and experience to mean $29,000.

20.  Enterprise Rent a Car Company of Los Angeles, LLC, has produced records, and provided information to Special Agent Hamada, indicating that on July 26, 2025, MANERA rented a vehicle under the name "Lucinda Manera," and returned the vehicle on September 16, 2025.

11

21.  Based on my training and experience, I know that an agency of the United States maintains records of passengers scheduled to fly into and out of the United States on commercial airline carriers.  From my review of such international flight information provided to FBI, I learned that on or about September 17, 2025, MANERA flew from the United States to Germany.  On September 26, 2025 in the late afternoon, I was present at Los Angeles International Airport and observed that MANERA had deplaned a flight that had just landed from Germany.

22.  As of the time I attested to this affidavit, Fritsch has not yet successfully been arrested on Judge Fischer's warrant, and I believe he remains a fugitive.

## IV. <u>CONCLUSION</u>

23.  For all the reasons described above, there is probable cause to believe that beginning no later than May 31, 2025 and continuing through at least August 11, 2025, in the Central District of California, LUCINDA JANE WEIST MANERA conspired with Bernhard Eugen Fritsch in violation of Title 18, United States Code, Section 371, to commit an offense against the United States, that is, obstruction of justice in violation of Title 18, United States Code, section 1503(a), and in furtherance of //

the conspiracy, MANERA committed the following overt act:  On or about May 31, 2025, MANERA made a payment to INDIVIDUAL 1.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this  26th day of
September 2025 at 6:16 p.m.

The Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

13

# SentEx N

-1 of 2-

FD-302 (Rev. 5-8-10)



**FEDERAL BUREAU OF INVESTIGATION**

Date of entry _____09/29/2025_____

On September 22, 2025 at approximately 7:45 p.m., officers of the Secretariat of Security and Citizen Protection (SSPC) located and detained BERNHARD EUGEN FRITSCH (FRITSCH) at ████████████████, Los Mochis, Sinaloa, Mexico.  SSPC Inspector JESUS ANTONIO LUQUE LÓPEZ and other SSPC team members transported FRITSCH to the Mexico Institute of National Migration's (INM) office in Mazatlán to process his deportation.

VERÓNICA JAZMÍN OSUNA VELARDE (OSUNA) at INM in Sinaloa previously requested that once FRITSCH was detained he should be transported to Mazatlán because he could not be processed in Los Mochis.  On September 22, 2025 at 7:53 p.m., Assistant Law Enforcement Attaché (ALAT) Peter A. Jackson advised the Sinaloa INM Director Cinthya Dalel Huerta Ayala the SSPC team departed Los Mochis with Fritsch and were in route to Mazatlán with an expected arrival time of about 1:30 a.m. to 2:00 a.m.

On September 22, 2025 at 8:29 p.m., Officer LUQUE asked ALAT JACKSON to speak on the phone with FRITSCH to ask him to be calm and explain to FRITSCH in English he was being transported to INM by the SSPC team who would be respecting all his rights.  ALAT JACKSON spoke with FRITSCH and identified himself as an FBI Special Agent.  ALAT JACKSON explained to FRITSCH the officers who detained him were legitimate federal Mexican law enforcement and they were transporting him to INM to be processed.  ALAT JACKSON asked FRITSCH to be calm and advised him the officers accompanying him wanted him to know they would respect his rights.  FRITSCH asked where the INM office was located and ALAT JACKSON replied it was in Mazatlán.  FRITSCH asked how long the processing at INM would take and the conversation ended as Inspector LUQUE got back on the line.

On September 23, 2025 at 4:38 p.m., OSUNA advised an injunction [an *amparo* in Spanish] was filed by a public defender on behalf of FRITSCH and the court was notifying FRITSCH.  At 5:02 p.m., OSUNA advised the Ninth District Court in Mazatlán granted the injunction and ordered INM to release FRITSCH in 24 hours.  OSUNA advised INM would comply with the judge's order and planned to release FRITSCH in 24 hours.  OSUNA explained the public defender interviewed FRITSCH as part of their deportation process and FRITSCH asked for the injunction to be filed because he did not want to be

Investigation on _09/22/2025_ at _Los Mochis, Mexico (Phone)_

File # ████████████████                                      Date drafted _09/26/2025_

by  Peter A. Jackson

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

FD-302a (Rev. 5-8-10)

Continuation of FD-302 of  (U) Bernhard Eugen Fritsch Detained in Sinaloa, Mexico                                           , On  09/22/2025  , Page  2 of 2

deported to Germany or to the US.  As part of the court agreement, FRITSCH was to check in every two weeks with the court.  OSUNA said if FRITSCH failed to check in, his court case would likely be dropped.

On September 24, 2025 at 12:40 p.m., ALAT JACKSON asked OSUNA to confirm if FRITSCH was released.  OSUNA did not answer the inquiry that day, but on September 25, 2025 at 11:57 a.m., OSUNA provided information to ALAT JACKSON that FRITSCH'S current location was at the Best Western Hotel Posada Freeman, Room 807, Avenida Olas Altas 79 Sur Mazatlán, Sinaloa, Mexico 82000.

On September 26, 2025, Officer LUQUE provided ALAT JACKSON the enclosed photos of a US permanent resident card in the name of CHARLES WIEST, date of birth August 8, 1961, USCIS# 207-012-071, and what appeared to be a photograph of FRITSCH.  FRITSCH had this card with him when he was detained by SSPC on September 22, 2025.

UNITED STATES OF AMERICA
PERMANENT RESIDENT

WIEST CHARLES 08 AUG 1961 M

Surname
WIEST

Given Name
CHARLES

USCIS#
207-012-071

Category
F47

Country of Birth
ENGLAND

Date of Birth
08 AUG 1961

Sex
M

Card Expires: 05/06/27
Resident Since: 05/08/17

FORM I-551
Rev (06-2017)    58610031

08 AUG 1961 M

131    If found, drop in any US Mailbox. USPS: Mail to USCIS, 7 Product Way, Lees Summit, MO 64002

C1USA2070120718MSC1620140285<<
6108089M2705066USA<<<<<<<<<<3
WIEST<<CHARLES<<<<<<<<<<<<<<<<