# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

### HONORABLE DALE S. FISCHER, U.S. DISTRICT JUDGE

UNITED STATES OF AMERICA,                )
                                         )
                    Plaintiff,           )
                                         )
       v.                                )   Case No. CR 17-520 DSF
                                         )
BERNHARD EUGEN FRITSCH,                   )
                                         )
                    Defendant.           )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS
SENTENCING HEARING
MONDAY, OCTOBER 20, 2025
8:01 AM
LOS ANGELES, CALIFORNIA

_____

MYRA L. PONCE, CSR NO. 11544, CRR, RPR, RMR, RDR
FEDERAL OFFICIAL COURT REPORTER
350 WEST 1ST STREET, ROOM 4455
LOS ANGELES, CALIFORNIA  90012
(213) 894-2305

UNITED STATES DISTRICT COURT

2

**APPEARANCES OF COUNSEL:**


**FOR THE PLAINTIFF:**

    JOSEPH T. MCNALLY
    Acting United States Attorney
    BY:  MONICA E. TAIT
        Assistant United States Attorney
    312 North Spring Street
    Los Angeles, California  90012


**FOR THE DEFENDANT:**

    CUAUHTÉMOC ORTEGA
    Federal Public Defender
    BY:  JAMES S. THREATT
    BY:  REBECCA M. ABEL
        Deputy Federal Public Defenders
    321 East Second Street
    Los Angeles, California  90012

MONDAY, OCTOBER 20, 2025; 8:01 AM

LOS ANGELES, CALIFORNIA

-oOo-

THE COURTROOM DEPUTY:  Calling Item Number 1, Case Number CR 17-520 DSF, United States of America versus Bernhard Eugen Fritsch.

Counsel, please state your appearances.

MS. TAIT:  Good morning, Your Honor.  Monica Tait for the United States.

MR. THREATT:  Good morning, Your Honor. James Threatt and Rebecca Abel on behalf of Mr. Fritsch who is not present.

THE COURT:  Good morning.

I take it you've checked outside to make sure he's not waiting to come in?

MR. THREATT:  I don't believe he's on the premises, Your Honor.

THE COURT:  All right.  And have you heard anything from him that would suggest that he's not able to get here?

MR. THREATT:  Your Honor, at this point, we've been getting updates from the Government with their filings.  So I think -- I'll leave it at that, if that's okay.

THE COURT:  All right.  I will take it from that that the defense has no information that would suggest that Mr. Fritsch, for example, is in the hospital and unable to get

here.

This is the time set for sentencing.  As an initial matter, defense counsel suggest that the defendant should not be sentenced in absentia, relying on the established right of criminal defendants to be present and suggesting the defendant may eventually be returned to this court.  Defense counsel claims it would be more prudent and a better use of judicial resources to postpone sentencing until the defendant is brought to court based on the arrest warrant or otherwise.  However, defense counsel admit that Rule 43(c) provides an exception where the defendant is voluntarily absent during sentencing.

The courtroom door is unlocked, and the defendant is not here.

There is abundant evidence in the record that defendant deliberately and voluntarily chose not to be here. The Government has provided evidence that defendant fled first to Mexico and then to Munich, Germany.  Both the Court and counsel have already expended substantial resources preparing for this sentencing.

The Court does not agree that it would be prudent or save resources to postpone the sentencing.  Your request is denied.

The Court has read and considered the revised sentence report and the three addenda.  The Court has also read and considered the objections, the responses, and the position

papers filed by the parties, including the exhibits.

Mr. Threatt -- I don't mean to exclude Ms. Abel -- the Court would generally ask defense counsel whether they had enough time to read those documents and review them with your client, whether they explained the contents to him and whether he understood them.

Mr. Threatt, do you have a response to any of those questions?

MR. THREATT:  Your Honor, the defense counsel had enough time to review the documents and prepare for sentencing.

THE COURT:  All right.  The Court would then ask the defendant similar questions, but obviously the Court can't do that today so I'll move on.

Does the defense want to contest or change anything in the presentence report other than what was submitted in writing?

MR. THREATT:  No, Your Honor.

THE COURT:  Do you have anything further by way of argument or anything further you want to say in mitigation or otherwise present on behalf of the defendant?

MR. THREATT:  Yes, Your Honor, briefly.

May I take the lectern?

THE COURT:  Sure.

MR. THREATT:  And, Your Honor, I don't have much to add.  I did just want to highlight, primarily with respect to

the enhancement for 10 or more victims, that the Government's filing highlights -- in addition to the argument we have about the acquittal on Count 2, barring the other similarly situated people from being included as victims, there are a number of other people who we frankly just don't have much information about at all.

There's a gentleman Brian O'Hea, B.O.H., who was never interviewed by the Government. And then, similarly, Sherri Ann Pollack, S.P.; L.B., who is the wife of Michael Bester, and T.S., who is Tim Sorenson -- none of those people were interviewed either. That's why they're not even included in the restitution figure. So we don't even know how much they invested, if at all.

So, for that reason, primarily, we believe that the enhancement for 10 or more victims should not apply. Similarly only 20 points -- or levels, I should say, should be added for loss amount.

Unless the Court has any questions, I don't have anything else to add, Your Honor.

THE COURT: All right. Thank you.

I would have inquired whether the defendant wanted to speak on his own behalf, but obviously he's not here.

Ms. Tait, anything you want to say?

MS. TAIT: Your Honor, just addressing briefly what Mr. Threatt said. His last remark was we don't know how much

UNITED STATES DISTRICT COURT

these folks invested, if at all.  But that is not true because the Government has provided that information in its exhibits and summarized it in sentencing Exhibit K.

In many cases, the Court is aware not every victim is interviewed, but yet they are still counted as a victim and they are still awarded restitution.  And for the reasons stated in our papers, I believe we've supported that here.

THE COURT:  All right.

MS. TAIT:  Thank you, Your Honor.

THE COURT:  Thank you.

The probation officer has revised the presentence report as requested by the Government, including by adding two victims to the victim list, loss amount, and restitution sections.

MS. TAIT:  Your Honor, may I be heard on one thing? I'm so sorry.

THE COURT:  Yes.

MS. TAIT:  I continue to be confused by the probation office's -- for example, their recommendation letter. They didn't answer what I had submitted regarding a couple of the victims.  The probation office left off Mr. Sorenson and Laura Bester from its restitution list and also did -- lumped in Ms. Pollack with her brother, Mr. Pollack, in the restitution analysis.

And so if the Court is inclined to find those people

8

are, in fact, victims, the Government would request the opportunity to provide a modified list because I think that the amounts that probation has added up is less than what the Government has added. And, again, the number of people to -- who paid is not as many as the Government has had. I just wanted to say that piece, Your Honor. Sorry about that.

THE COURT: All right. Well, I'm sorry, because I saw that your number was higher, but then I was searching to try to figure out what the problem was. And then I think -- while I was working on this, I think, Friday, I thought that the probation officer had gotten back in touch with the Government and the Government then agreed with the number.

MS. TAIT: Oh, I'm sorry, Your Honor. I did not -- I did not see that the probation officer said that was the case.

THE COURT: She said it to me.

MS. TAIT: I was in touch with the probation officer last week to ask why it is that the probation report did not include the references to Mexico and just suggest that that might be something to add to the PSR. But I did not specifically raise the issue of the restitution list still being incorrect with the probation office this week.

For that, I apologize, Your Honor, because I did not -- I did not notice that it continued to be incorrect until I began preparing on Friday for this -- for today's sentencing.

UNITED STATES DISTRICT COURT

I'm looking at the revised second, um, recommendation letter now.  And I see that, um --

THE COURT:  All right.  The present recommendation letter is -- is dated October 16, and it's Document 565.

MS. TAIT:  That is the one I'm looking at.

THE COURT:  Okay.

MS. TAIT:  It says revised second at the top, October 16th.

And so the victims listed -- S.B. is correct, Harrington Global -- this is on page 1, Your Honor -- is correct, E.M. is correct, J.M. is correct.  R.P., that is a -- a compilation of two people.  It's really R.P. and his sister, S.A.P.  And the amounts are set forth on sentencing Exhibit K what they should be.

C.A. is a corporate --

THE COURT:  Stop.

MS. TAIT:  Sorry?

THE COURT:  Stop.

MS. TAIT:  Sure.

THE COURT:  The amounts are set forth on sentencing Exhibit --

MS. TAIT:  K.

THE COURT:  There's so many pages here.

MS. TAIT:  I have a clean copy here, Your Honor -- well, it's a little clean.  I've written my little numbers on

the side.

THE COURT:  Okay.  I have K.

MS. TAIT:  Thank you, Your Honor.

THE COURT:  Government -- defense have K?

MR. THREATT:  We do, Your Honor.  We're looking at it right now.

THE COURT:  Okay.  All right.  So I see R.P. and S.P. as separately stated.

MS. TAIT:  Yes.  And then -- so continuing -- so I think the R.P. amount is greater than what the Government has estimated -- has been able to show from the facts.

Between the two of them, R.P. and S.P., I believe, unless my math is totally off, totals $680,000.

I think I understand the reason for that, Your Honor.  The first -- the first PSR calculated R.P. based on an exchange rate.  And I think that's -- that's the reason for the difference.  And, in fact, we have the actual dollar amounts in sentencing Exhibit K.

The remaining ones listed on the -- on the letter are correct, but the letter is missing a couple more.  The letter is missing Laura Bester, which is -- she's listed on sentencing Exhibit K.  Tim Sorenson, also listed on that sentencing exhibit.

Those are the only ones that the letter is missing, Your Honor.

**UNITED STATES DISTRICT COURT**

THE COURT:  So it didn't end up on the letter but -- I'm getting confused.  It sounds strange.  Those initials are familiar, so --

MS. TAIT:  Yes.

THE COURT:  I saw them somewhere other than on K.

MS. TAIT:  That's correct, Your Honor.  The probation officer included them in the PSR on -- let me see if I can find the paragraph, Your Honor.

The probation officer referenced them at paragraph 57 of the, um -- the final PSR.

THE COURT:  All right.  Yes.  That's where I saw them.  That's where I was counting from.  So --

MS. TAIT:  It's just the restitution calculation, I think, Your Honor, that is -- that is off.  And, again, I -- I submit that the calculation that the Government has provided is correct.

THE COURT:  Okay.  Well, does the defense have any response?

MR. THREATT:  Your Honor, I would note that this Exhibit K includes Ian Mann.

THE COURT:  Yeah, but it's not in the total.

MR. THREATT:  I just wanted to clarify.

Your Honor, just going back to my earlier comments -- again, a number of these people have never been interviewed by the Government.  And while that doesn't

necessarily preclude someone from being considered a victim, I think it's highly important in a case like this that turns on the nature of their investment, what they were told and by whom in the period leading up to the investment.

And we knew nothing from a number of these people about who they were communicating with, what they knew.  In fact, a couple of them make it pretty clear they never spoke with Mr. Fritsch or least didn't have substantive conversations with him.

There's one gentleman, I believe this was F.S., who is Francis Scotland, says he spoke with Mr. Fritsch on one occasion for about ten minutes but could not recall any of the details.  And that is attached as Exhibit F to the Government's sentencing position.

And then Exhibit D to the Government's sentencing position, I think, is the important one because that includes two 302s of interviews with R.P., who is Robert Pollock.  And it's clear that all the information about T.S., S.P., and L.B., who is the wife of Michael Bester, all that information is being relayed secondhand by R.P.  And none of those people have ever provided any information about the nature of their investments or who -- what they were told or by whom.

And certainly in a case like this that turns on questions of intent, I don't think it's appropriate for them to be considered victims, either for the 10 or more victim

enhancement or for them to be included in the restitution figure and the loss amount.

THE COURT:  All right.  Ms. Tait?

MS. TAIT:  Thank you, Your Honor.

As the Government pointed out in its sentencing position and also as referenced in shorthand on Exhibit K -- sentencing Exhibit K, the victims that have been put on this list are the folks that -- they are either tied to people who were interviewed or they were themselves interviewed.

And the ones that are tied to people interviewed were investing in investment rounds with other investors.  In the case of L.B., S.P., R.P., and T.S., those victims' contributions were bundled and they came in all at the same time with other investors, including, in some instances, Danny Guy.

The Government did file, I think, sentencing Exhibits A -- no, sorry, B and C, the subscription agreements and also a -- an excerpt from one of the subscription documents that related to one of these investors in which it contained the same representation about use of proceeds that -- that Danny Guy invested pursuant to -- among other factors.

The -- there are many investors, in addition to these, that are not included on the victim list.  This company took in $30 million during the period in question.  The Court has to make a reasonable estimate of loss and a reasonable

UNITED STATES DISTRICT COURT

account of victims.  And -- and, also, restitution needs to be proved by a preponderance of the evidence.

And I submit that the Government has provided sufficient information for the Court to conclude that there were more than 10 victims, the loss was above $25 million, and that these victims should be accorded restitution based on their association with their -- direct contacts with Mr. Fritsch or their associations -- they were brought in with people who had direct contacts with Mr. Fritsch, and the presence of the use of proceeds representation in the subscription agreements, Your Honor.

MR. THREATT:  Your Honor, could I --

THE COURT:  So tell me -- yes.

MR. THREATT:  My apologies, Your Honor.

THE COURT:  Go ahead.

MR. THREATT:  I just want to respond briefly.

The defense obviously disagrees with the Government's position.  But in addition to, um, our prior argument, the Government's position totally ignores the acquitted conduct guideline.  This is not a case, for instance, where Mr. Fritsch was convicted --

THE COURT:  Slow down, please, Mr. Threatt.

MR. THREATT:  My apologies, Your Honor.

This is not a case where Mr. Fritsch was convicted on a single-count Indictment, in which case, the Government's

position -- we have more merit, in our view; though, as I said, we would still disagree.

But the jury was very clear in acquitting Mr. Fritsch on Count 2.  And the arguments the Government is now making are very similar to the arguments made at trial with respect to Ian Mann.  These are people like Ian Mann who were associates of people who invested.  I think many of these people, frankly, are friends -- are friends with somebody who is himself associated with Danny Guy.  And so they're even further downstream and further removed from Mr. Fritsch than Ian Mann was.

And so certainly with the acquittal on Count 2, the acquitted conduct guideline may not apply directly to these individuals, but we think it certainly bears on this question.

And for that reason, in addition, we don't think they should be considered victims either for that two-point enhancement or that they should be included in the restitution or loss figure.  And that should reduce the loss enhancement to 20 levels as opposed to 22.

THE COURT:  All right.  Thank you.

Ms. Tait, what is the total amount of restitution?

MS. TAIT:  Your Honor, the total amount that we calculate is 27 million -- let me just put it out in numerals.  $27,044,739.50.

Your Honor, earlier -- I'm sorry that I did not

highlight the fact that the probation office's calculation of loss -- or, sorry, restitution for Harrington Global is actually off also by an amount that's indicated, um -- let's see -- in the, um -- in sentencing Exhibit K and also in our papers.

The CFO of StarClub recorded an additional $248,352 received in cash from Harrington that is above that 22 million amount. And so the total loss for Harrington is greater than that on the, um -- on the recommendation letter.

And I can quickly make that calculation, Your Honor. I've got several calculations, I haven't made that one. Would you like me to do that, Your Honor?

THE COURT: Yes.

MS. TAIT: All right. I'll do that right now. Just a moment.

MR. THREATT: And, Your Honor, just for clarity's sake, I believe the total figure that was just read differs from Exhibit K. I don't know if it's because of the discrepancy that Ms. Tait just highlighted. I just want to make sure that we're all clear on what the total figure is in the Government's view.

MS. TAIT: Counsel is correct that the sentencing loss column of Exhibit K differs from the restitution amount. That is correct. I'm talking about the restitution amount, not the sentencing loss column.

MR. THREATT:  Understood.  But I feel like the number you just read also differs from Exhibit K.

(Pause in the proceedings.)

MS. TAIT:  I'm doing some math, Your Honor, sorry. I'm using the calculator.

(Pause in the proceedings.)

THE COURT:  You know, I have another matter at 8:30. It should be a short matter.  And Ms. Tait may be much better with numbers than I am, but I don't want to rush her while she's standing here and then have to do an amendment or something.

So why don't you all meet out in the hall or the witness room or wherever, and Ms. Tait can calculate the --

MR. THREATT:  Yes, Your Honor.

MS. TAIT:  Thank you, Your Honor.

THE COURT:  And Ms. Kim will let me know when our next defendant is here.

(Proceedings in unrelated matters were held.)

THE COURT:  Back on the record in United States versus Fritsch.

MS. TAIT:  All right.  Thank you, Your Honor.

So what I've done is I've created a -- a variant of sentencing Exhibit K with a new column on the right that says "Restitution."  And I could e-mail that to the Court's clerk so the Court could then see those figures.

And I think the Government's calculation remains what I said earlier, the $27 million figure.

THE COURT:  All right.

MS. TAIT:  Just give me a moment.  I just e-mailed it to defense counsel.

THE COURT:  Take your time.

MS. TAIT:  I'm sorry, Your Honor.  My computer disconnected from the Internet.  My apologies here.

THE COURT:  That's okay.

MS. TAIT:  Although it's slightly informal, I think what I'm going to do, Your Honor, is just e-mail to the Court's clerk what I sent to defense counsel.

THE COURT:  That's fine.

MS. TAIT:  In sort of a forward.  Leverage the technology that we have, Your Honor.

(Pause in the proceedings.)

MS. TAIT:  Ms. Kim, the e-mail has been sent.

THE COURTROOM DEPUTY:  I received it.

THE COURT:  Now, I don't -- the number for the offense levels exceeds 25 million either way.  I don't need to make an order of restitution today.  I have 90 days afterwards.  So if we want to just leave that issue.

MR. THREATT:  I'm happy to do whatever the Court prefers, Your Honor.

MS. TAIT:  Could we resolve that within a week,

Your Honor, or two weeks?

THE COURT: Yes.

MS. TAIT: The Government would be available. We'd like to get the restitution order in because we do think that there are assets, and it's important for us to get that order in.

The Government's available two weeks from today or sooner if the Court wants.

MR. THREATT: And, Your Honor, it may not be necessary to have another hearing; though, maybe the parties could meet and confer and file an update with the Court. And if we feel it's necessary to have a hearing at that time, maybe we can ask the Court to put one on calendar.

THE COURT: All right. Well, I'm going to put it on calendar now for November 3 at 8:30, but you can certainly submit something in lieu of an appearance.

MS. TAIT: Thank you, Your Honor.

THE COURT: I want to move this along.

Okay. All right. Ready to continue?

MR. THREATT: Yes, Your Honor.

THE COURT: Okay. The Government argues that the defense counsel's objections were submitted too late, and no explanation has been given for that. But I'm going to consider the arguments anyway despite the late filing.

Defense counsel object to the 20-level enhancement

for loss under 2B1.1(b)(1), asserting that the loss is not more than $25 million and that none of the investor funds, other than D.G.'s, should be considered.

Defense counsel argue that the jury's failure to convict as to Count 2 means that the jury did not agree with the Government that defendant was accountable for investments by those investors beyond D.G., including Investor I.M.  The Court disagrees with the defendant based on the facts in this case and the evidence submitted.

Under the 2024 guidelines, the Court cannot consider acquitted conduct with regard to I.M. unless such conduct also establishes, in whole or in part, the instant offense of conviction.  It's not at all clear to the Court what that language means or how it is to be applied.

But in one possible interpretation, the Court would be able to consider the Count 2 conduct as relevant conduct. But because the Court finds that the loss amount exceeds $25 million even without I.M.'s loss, the Court need not decide that issue.

In an abundance of caution, the Court asks -- the Government asks the Court not to include the $1 million investment from I.M. based on the Government's position.  And after a further discussion with the Court, the probation officer has removed I.M. from both the victim restitution and loss amounts; though, apparently additional victims should have

been added.

For the reasons stated by the probation office and the Government, the Court concludes that there are 10 or more victims.

Defense counsel argues that the sophisticated means enhancement does not apply.  Again, the Court disagrees, considering all the evidence submitted at trial and the facts described in the PSR, as well as the Government's response.  It is clear that defendant used a variety of sophisticated means to deceive investors and cover his deception.

Finally, defense counsel also object to the recommended payment of restitution within 90 days.  Defendant has not established that he's unable to pay that entire amount immediately, and the Court concludes that the requirement for immediate payment is appropriate.

The Government has not provided evidence that any investors suffered substantial financial harm.

I assume you didn't get any more evidence?

MS. TAIT:  We did not, Your Honor.

THE COURT:  All right.  Therefore, the advisory guidelines indicate that he should not receive a two-level zero-point reduction.

The Court suggests that in the next review the Sentencing Commission add absconding to avoid trial or sentencing as a disqualifying factor.

If any of the Court's other conclusions were found to be in error on resentencing, the Court would consider whether its disagreement with the guidelines in this regard justifies declining to apply that reduction.  Because the sentence the Court has chosen to impose is appropriate, the Court will apply the zero-point reduction here.

The Court finds the revised report to be accurate and correct other than the issues just discussed on the record.  The Court adopts the report and the calculation of the advisory sentencing guidelines.  The advisory guidelines are the starting point and the initial benchmark in the Court's analysis.

The Court is consulting and taking into account the current edition of the guidelines.

The total offense level is 33.  The criminal history category is 1.  The guideline range for custody is 135 to 168 months.  The guideline range for supervised release is one to three years.  The range for the fine is 35,000 to $350,000.  And the special assessment to the Crime Victims Fund is $100.

In making an individualized determination based on the facts, the Court is considering the factors described in 18, United States Code, 3553(a), especially, but not exclusively, the nature and circumstances of the offense and the history and characteristics of the defendant, the need for the sentence to reflect the seriousness of the offense, to

promote respect for the law and provide just punishment, to afford adequate deterrence for criminal conduct, and protect the public from further crimes of the defendant.

I'm going to go back for a minute to the fine range I mentioned.  And my mind isn't quick enough to figure out whether anything we discussed would impact that fine range.  So it will apply to whatever guideline and amount we've calculated.

With regard to the nature and circumstances of the offense, defense counsel argue that this was not a fraud in the classic sense.  And this charge would generally be handled as a civil case.

The Court agrees that StarClub appeared to be a real company with a real product, office space, employees, clients, and a legitimate plan.  But criminal courts have seen many fraud cases involving both real and imagined companies, and criminal courts have seen many other cases where legitimate businesses become the vehicle for significant fraud schemes when the company is proved to be less successful than hoped for.  And for that and other reasons, including simple greed, owners or corporate officers turn to fraud and are indicted for fraud as well as being sued in civil court.

Defense counsel also argue that, viewed in context, defendant's statements were half-truths.  Numerous dictionaries define a half-truth as a statement that is partly true and is

intended to mislead or deceive.  Even assuming some of the

defendant's statements were partially true rather than

completely false, the evidence showed they were intended to and

did deceive.  The argument does not assist the defendant.

Putting aside the issue of obstruction, which the

Court addresses later, the nature and circumstances of the

offense are neutral at best but only because the magnitude of

the fraud is accounted for by the application of several

guidelines enhancements.

If any of those were incorrectly imposed, the nature

and circumstances would be aggravating and would call for at

least a high-end sentence.

As to the history and characteristics of the

defendant, defendant has shown that he has absolutely no

respect for the law, this Court's orders, or his own

commitments to the Court.

Though he was allowed to travel freely while on

pretrial release and did so apparently without incident, it is

now clear that he violated his pretrial release conditions in

numerous ways, as described in the presentence report and in

more recent filings by the Government.  He continued to engage

in fraudulent conduct of a different kind and in a variety of

ways.

In addition to other conduct described in the PSR,

not only has he failed to appear for sentencing but he involved

his girlfriend in his illegal conduct.  That she has now been charged with a federal crime is something he is smart enough to have known was likely to happen.

That he allegedly rarely stopped working and is a devoted father to his children and supportive of his ex-wife is not at all mitigating.  Much of which he worked at was finding ways to divert investor money for his own benefit and that of his ex-wife and children.

That he hired a tutor for his son and had one of his employees drive his son from defendant's Malibu mansion to the son's school does not make him a good father.  A man who makes sacrifices, monetary or otherwise, for his children is a good father.  But defendant sacrificed nothing.  He was paying a tutor and a driver with other people's money.

Obviously, defense counsel are trying to make the best argument possible with what they have because they don't have their client.  But that's on him.  And I think they have made the best argument possible.

Also, defendant certainly hasn't set a good example for his children by evading responsibility for his conduct by committing further crimes.

The Government argues that a, quote, "modest" two-level variance should apply, given the extreme degree of obstruction of justice in this matter.  I don't think variances have to be stated in terms of levels, as the requirement is

that the Court impose a sentence that is reasonable but no greater than necessary to comply with the purposes stated in 18, United States Code, Section 3553(a).

The Court, nevertheless, agrees with the Government that defendant's conduct as described in the PSR and by the Government and established in the Court's records is not adequately addressed by a two-level adjustment for obstruction of justice and that an increase of only two levels, especially with only a mid-range recommendation, is, indeed, modest.

A sentence of 180 months is the lowest reasonable sentence for the defense in these extremely unusual circumstances.

The additional requirement that the sentence reflect the seriousness of the offense, promote respect for the law, and provide just punishment are also appropriately addressed by a 180-month sentence and, to the extent the sentence is reported publicly, should also afford some deterrence for this type of criminal conduct by others in similar circumstances.

The Court will now state the sentence, but counsel will have a final chance to make legal objections before sentence is imposed.

Does either counsel know of any reason why sentence should not now be imposed?

MS. TAIT:  No, Your Honor.

MR. THREATT:  No, Your Honor.

THE COURT:  The Court finds that the following sentence is reasonable and is sufficient but is no greater than necessary to comply with the purposes stated in 18, United States Code, Section 3553(a).

As I said, restitution will be determined at a hearing set for November 3rd, 2025, at 8:30 AM.

It's ordered that the defendant shall pay to the United States a special assessment of $100, which is due immediately.  Any unpaid balance shall be due during the period of imprisonment at the rate of not less than $25 per quarter and pursuant to the Bureau of Prisons Inmate Financial Responsibility Program.

Restitution, when ordered, shall be paid in full within 30 days after the date of this -- of the -- what will be the amended judgment and the Court's order.

The Court finds from a consideration of the record that the defendant's economic circumstances, in the absence of contrary evidence, allow for a full payment of restitution by that date.  If the defendant makes a partial payment, each payee shall receive approximately proportional payment, unless another priority order or percentage payment is specified.

The defendant shall comply with Second Amended General Order 20-04.

Pursuant to Guideline Section 5E1.2(a), all fines are waived, as the Court finds that the defendant -- well, he

hasn't really submitted any indication that he's unable to pay.

Is the Government asking for a fine amount?

MS. TAIT:  We have not asked for a fine in light of the high amount of anticipated restitution, Your Honor.

THE COURT:  Well, I'm just saying, the defendant has established that he's unable to pay -- he hasn't established anything.

MS. TAIT:  I think that's correct, that it would be inconsistent for the Court to -- to find exactly that way.

Is there a way of saying -- is there an appropriate finding that, given the obligation to pay restitution, the defendant would not have the ability to pay an additional fine? I -- I'm struggling here, Your Honor.  Either that or --

THE COURT:  Why don't I just impose a fine?

MS. TAIT:  Or the Court could just impose a fine, a reasonable fine according to the --

THE COURT:  I don't have -- I mean, you mentioned he brought in --

MS. TAIT:  The fine range is at paragraph 104, Your Honor, of the PSR.

THE COURT:  Yeah.  But that's based on -- well, I guess it's still based on the guideline range.  And what I did was vary, so I guess that's right.

So it looks like it's -- 35,000 is the low end.  Is that right?  Tell me again what it is, counsel.

MS. TAIT:  I see 35,000 to 350,000, Your Honor, according to the probation officer.

THE COURT:  All right.  So I will impose --

MR. THREATT:  And, Your Honor, we -- and I understand where the Court seems headed.  We did not have a chance to object to a fine because the probation officer did not recommend one.  We obviously would object to one being imposed.

THE COURT:  All right.  And as we've just discussed, he also has not established -- established that he's unable to pay or that he's not likely to become able to pay any fine in addition to restitution, albeit restitution is a very high number.  So I will impose a fine of $35,000, also, to be paid in full within 30 days of this judgment.

No preliminary order of forfeiture, Ms. Tait?

MS. TAIT:  That's right, Your Honor.  There is no criminal forfeiture.

THE COURT:  Okay.  Pursuant to the Sentencing Reform Act of 1984, it's the judgment of the Court that the defendant, Bernard Eugen Fritsch, is committed on Count 1 of the Indictment to the custody of the Bureau of Prisons for a term of 180 months.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of three years under the following terms and conditions:

1.   The defendant shall comply with the rules and regulations of the U.S. Probation and Pretrial Services Office and Second Amended General Order 20-04, including the conditions of probation and supervised release set forth in Section 3 of Second Amended General Order 20-04;

2.   The defendant shall not commit any violation of local, state, or federal law or ordinance;

3.   During the period of community supervision, the defendant shall pay the special assessment and restitution in accordance with -- special assessment, restitution, and fine, in accordance with this judgment's orders pertaining to such payment;

The defendant shall cooperate in the collection of a DNA sample;

5.   The defendant shall refrain from any unlawful use of a controlled substance.  He shall submit to one drug test within 15 days of release from custody and at least two periodic drug tests thereafter, not to exceed eight tests per month as directed by the probation officer;

6.   He shall comply with the immigration rules and regulations of the United States and, if deported from this country, either voluntarily or involuntarily, not reenter the United States illegally.  He is not required to report to the Probation and Pretrial Services Office while residing outside of the country.

**UNITED STATES DISTRICT COURT**

Well, he wouldn't do it anyway.  This usually applies to people who were here illegally but -- anyway, while residing outside of the United States.  However, within 72 hours of -- you know what?  I don't know why I should say that.

I'm going to strike the language that he's not required to report to Probation and Pretrial Services while residing outside of the country.

In addition, within 72 hours of release from any custody or any reentry to the United States, during the period of court-ordered supervision, he shall report for instructions to the U.S. probation office located at 300 North Los Angeles Street, Suite 1300, Los Angeles, California 90012;

7.  He shall not be employed in any capacity wherein he has custody, control, or management of the defendant's employer's funds;

8.  The defendant shall not engage as whole or partial owner, employee, or otherwise in any business involving loan programs, telemarketing activities, investment programs, or any other business involving the solicitation of funds or cold calls to customers without the express approval of the probation officer prior to engaging in such employment.

Further, he shall provide the probation officer with access to any and all business records, client lists, and other records pertaining to the operation of any business owned, in

whole or in part, by the defendant as directed by the probation officer;

9. He shall apply all monies received from income tax refunds, lottery winnings, inheritance, judgments, and any other financial gains to the court-ordered financial obligation.

The defendant shall submit his person, property, house, residence, vehicle, papers, computers, cell phones, other electronic communications or data storage devices or media, e-mail accounts, social media accounts, Cloud storage accounts, or other areas under the defendant's control to a search conducted by a U.S. probation officer or law enforcement officer. Failure to submit to a search may be grounds for revocation.

The defendant shall warn any other occupants that the premises may be subject to searches pursuant to this condition. Any search pursuant to this condition will be conducted at a reasonable time and in a reasonable manner on reasonable suspicion that the defendant has violated a condition of his supervision and that the areas to be searched contain evidence of this violation.

It is further ordered that he surrender himself immediately and no later than October 22, 2025, to the United States Marshal located at the United States Courthouse, 1st Street, U.S. Courthouse, 350 West 1st Street, 3001,

Los Angeles, California.

Maybe I should just say immediately.  I don't want anybody to think the arrest warrant isn't imposed right now.

MS. TAIT:  Thank you, Your Honor.  That's probably a good idea.  I agree with that.

So the Court would be striking the October 22nd --

THE COURT:  Yes.  So he's to surrender himself immediately.

Okay.  Does either counsel have anything further?

MR. THREATT:  No, Your Honor.

MS. TAIT:  Did the Court impose the special assessment?  I'm sorry, yes -- yes, I'm sorry.  The Court did.

THE COURT:  The Statement of Reasons shall be included in the commitment order and judgment and shall be provided to the probation office, the Sentencing Commission, and the Bureau of Prisons.  A complete copy of the revised presentence report shall be provided to the Bureau of Prisons and the Sentencing Commission.  Any other copies of the report and related materials shall remain confidential.  If an appeal is taken, counsel on appeal shall have access to the report.

I will rely on defense counsel and the Ninth Circuit -- I guess I'll rely on both sides and the Ninth Circuit to determine whether defendant has a right to appeal his conviction and his sentence.  I did not do a lot of research, but it appears that the Ninth Circuit would make an

independent judgment about whether he was voluntarily absent.

Do you have any different thought, Ms. Tait?

MS. TAIT:  I think that -- I haven't done some research in some time, Your Honor.  I guess perhaps the Court could notify the deadline if an appeal were permitted?

THE COURT:  And since I took that out of my script --

MR. THREATT:  It's 14 days, Your Honor.

THE COURT:  All right.  So the defendant has 14 days to appeal this judgment.  And if he needs assistance, because he doesn't have counsel, then the Clerk of the Court will assist.

All other counts and superseded -- there's no superseded Complaints.  Any other charging documents are dismissed.

Is the Government asking for the Court to do anything further with regard to the defendant or --

MS. TAIT:  Not at this moment, Your Honor.

THE COURT:  All right.  Anything further from the defense?

MR. THREATT:  No, Your Honor.  Thank you.

THE COURT:  All right.  Thank you.

MS. TAIT:  Thank you, Your Honor.

(Proceedings concluded at 9:24 AM.)

**CERTIFICATE OF OFFICIAL REPORTER**

COUNTY OF LOS ANGELES    )
                         )
STATE OF CALIFORNIA      )


          I, MYRA L. PONCE, FEDERAL OFFICIAL REALTIME COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES.


                    DATED THIS 28TH DAY OF NOVEMBER, 2025.



                    /S/ MYRA L. PONCE
          _____
          MYRA L. PONCE, CSR NO. 11544, CRR, RDR
             FEDERAL OFFICIAL COURT REPORTER


**UNITED STATES DISTRICT COURT**