TODD BLANCHE
Acting Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division
MONICA E. TAIT (Cal. Bar No. 157311)
Assistant United States Attorney
Major Frauds Section
      1100 United States Courthouse
      312 North Spring Street
      Los Angeles, California 90012
      Telephone: (213) 894-2931
      Facsimile: (213) 894-6269
      E-mail:    monica.tait@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CR No. 17-00520-DSF |
|---|---|
| Plaintiff, | GOVERNMENT'S REPLY TO MARC AND TERESA P. MONTGOMERY'S OPPOSITOIN TO MOTION FOR SUMMARY ADJUDICATION OF OBLIGATION; EXHIBIT 1 |
| v. | |
| BERNHARD EUGEN FRITSCH, | |
| Defendant. | HEARING DATE:  June 1, 2026 TIME:  8:30 A.M. PLACE: Courtroom 7D, before the Honorable Dale S. Fischer, United States District Judge |

        Plaintiff United States of America hereby files this Reply to

the Opposition by sureties Marc Montgomery and Teresa P. Montgomery

to the Government's Motion for Summary Adjudication of Obligation

and/or Alternatively Surety's Motion to Set Aside Bond Forfeiture And

Remit Bond, filed as docket no. 638.

This document is based upon the attached Memorandum of Points and Authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: May 18, 2026          Respectfully submitted,

TODD BLANCHE
Acting Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

JENNIFER L. WAIER
Chief Assistant United States Attorney &
Chief, Criminal Division


_____/s/_____
MONICA E. TAIT
Assistant United States Attorney

Attorney for Plaintiff
UNITED STATES OF AMERICA

## **MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Sureties Marc and Teresa P. Montgomery ("Surety MM" and "Surety TM," respectively; collectively "Sureties") concede that this Court has the power to forfeit the $137,129.07 bond they pledged.  They now move to set aside the Court's anticipated judgment, pursuant to Fed. R. Crim. P. 46(f)(2)(B) and (f)(4).  Opposition (Dkt. 638) at 2, lines 4-5 (citing both provisions).  The Court should enter judgment and deny their requested relief, because they have not shown that justice does not require bail forfeiture.[1]

**II.   ADDITIONAL FACTS**

On April 3, 2025, a jury convicted defendant Bernhard Fritsch ("Fritsch" or "defendant") on one count of wire fraud, in violation of 18 U.S.C. § 1343.  (Dkt. 544 (Partial Transcript) at 4-5.)  After the jury was excused, the government moved for immediate remand of the defendant:

THE PROSECUTOR:    [T]he government would like to move for remand of the defendant, pursuant to 18 U.S.C. 3143.  We would like to be heard at this time.

THE COURT:    I would rather have some briefing.  Obviously, there are issues, which is one aspect.  The likelihood that the defendant would flee is another aspect.  So I think Counsel should be prepared to make some kind of proffer, and I would consider providing some conditions, if you are requested that Mr. Fritsch remain out of custody.

DEFENSE COUNSEL:    Yes, your Honor.  We're certainly making that request, and we would appreciate the extra time to brief the issues as the Court alluded to.

---

[1]  Neither defendant Bernhard Fritsch nor his son, David Stocker Fritsch aka David Stocker, have filed any opposition to the government's Motion.  Accordingly, the Court should enter judgment against them as requested by the Motion.

> THE COURT:          Mr. Fritsch, I'm expecting you to be on your honor and not leave the jurisdiction.
>
> DEFENDANT:          Absolutely, Your Honor.
>
> THE COURT:          All right.  Thank you.

(Dkt. 544 at 8-9.)  Following the Court's directive for briefing, and anticipating strong opposition from the defendant, the government filed its supporting brief and fourteen exhibits on April 28, 2025, the defendant opposed, and the matter was set for hearing on June 2, 2025. (Dkt. nos. 524, 528; 522.)  On May 30, 2025, defense counsel filed a supplemental declaration from defendant, executed May 29, 2025, in which defendant claimed to be in Los Angeles and insisted he was not fleeing or hiding.  (Dkt. 534 at 4, 7.)

Fritsch did not appear at the June 2, 2025 hearing.  His counsel indicated "we have been in very recent contact with Mr. Fritsch up and through Friday" (referring to May 30, 2025, the date the declaration was filed). (Dkt. 542 (Transcript) at 3.)  But the government's subsequent investigation shows that on June 1, 2025, Fritsch and another individual ("Individual 1") left Westlake Village (within this district) for Arizona, and crossed the Mexican border by car on June 2, 2025, the date of the hearing.  (Dkt. 552-4 (affidavit) at 15-16.)

## III. ARGUMENT

### A.    The Applicable Legal Standards For Setting Aside a Bail Forfeiture

Once a bail forfeiture has been ordered, Rule 46(f)(2) provides that a court may set aside in whole or in part the forfeiture if:

> A. the surety later surrenders into custody the person released on the surety's appearance bond; or

2

> B. it appears that justice does not require bail forfeiture.

Fed. R. Crim. P. 46(f)(2).  Because MM and TM have not surrendered Fritsch into custody, Fed. R. Crim. P. 46(f)(2)(A), they can rely only on the second prong, permitting the forfeiture to be set aside if "it appears that justice does not require bail forfeiture," Fed. R. Crim. P. 46(f)(2)(B).

District courts may consider the following factors in determining whether to set aside a bail forfeiture:

> 1) the defendant's willfulness in breaching a release condition; 2) the sureties' participation in apprehending the defendant; 3) the cost, inconvenience, and prejudice suffered by the government; 4) mitigating factors; 5) whether the surety is a professional or a member of the family or a friend, and 6) the appropriateness of the amount of the bond.

United States v. Amwest Surety Inc. Co., 54 F.3d 601, 603 (9th Cir. 1995); United States v. Nguyen, 279 F.3d 1112, 1115 (9th Cir. 2002). "[T]hese are merely non-exclusive factors for consideration, and not all of the factors need to be resolved in the government's favor." Nguyen, at 1116.  Moreover, the district court has "wide discretion" to determine whether to grant relief from forfeiture.  Id. at 1115; United States v. Stanley, 601 F.2d 380, 382 (9th Cir. 1979) (per curiam).

**B.    The Amwest Factors Weigh in Favor of Enforcing the Bond**

Here, consideration of the relevant factors weighs strongly against the Sureties' position.

First, Sureties concede, as they must, that Fritsch's breach of the release condition requiring him not to flee and to obtain court approval before leaving the country was willful.  Already subject to

3

conditions preventing him from leaving the country, Fritsch promised this Court after the guilty verdict that he "absolutely" would not leave the jurisdiction, and defiantly filed a declaration at the end of May 2025 reaffirming that he would not leave.  He left the district June 1, 2025, crossing the border to Mexico on June 2 (the day of the hearing) instead of appearing at the hearing to decide continued release or detention.  Fritsch's breach was willful to the extreme.

Sureties claim that consideration of the second factor ("the sureties' participation in apprehending the defendant," Amwest at 603) weighs in their favor, but it does not.  It is neutral.  This factor is expressly tied to evaluation of the actions of the sureties, not anyone else.  If applicable, the Court would here evaluate instances in which lay sureties "participate[d] in apprehending" a defendant such as by immediately calling the authorities to report his flight, or where professional sureties might "participate" by undertaking investigative efforts or aiding in his actual recapture.  See United States v. Jimenez, 2025 WL 2178456 (D. Conn. March 7, 2025) (unpublished disposition cited by Sureties; that sureties "assisted in the apprehension of the defendant" weighed in their favor, where they documented defendant's disappearance and attempted to locate defendant).  Sureties here make no claim to have "participated" in efforts to apprehend defendant.

Instead, Sureties turn factor two on its head, claiming that it weighs in their favor because of the government's actions, not their own.  Relying on United States v. Galvez-Uriarte, 709 F.2d 1323 (9th Cir. 1983), they claim the bond should not be enforced because

4

government "materially increased the risk" to Sureties of defendant's flight by "taking no action" to ask this Court to order the reinstallation of defendant's ankle bracelet. Opposition at 7-8. In Galvez-Uriarte, the foreign citizen defendant was released on a bond ordering that he "could not leave California without permission of the court." 709 F.2d at 1324. Defendant then requested the government's permission to remain in the United States until trial, but the government instead provided defendant a parole letter that effectively required defendant to return to Mexico in violation of his release conditions, and promising that he would be permitted to re-enter the United States for trial. Id. When defendant failed to return, the government moved to forfeit the bond, and the district court agreed. Id. Reversing, the Ninth Circuit found that the government's action "[a]uthorizing a defendant to leave the country where the terms of the bail bond prohibit[ed] such travel materially increase[d] the surety's risk," and "[w]here the defendant leaves the country under such authorization, the bond will not be forfeited if the defendant later fails to appear when required." Id. at 1325. Sureties similarly rely on United States v. Aguilar, where the defendant left the jurisdiction only because he was cooperating in a government-controlled narcotics investigation, which the Court found posed a materially increased risk to the sureties. 813 F. Supp. 727, 729 (N.D. Cal. 1993). This line of authority does not help the Sureties, because the government here did nothing to alter defendant's conditions of release (conditions Sureties had expressly approved, see Dkt. 163 at 1-4 (declarations from Sureties approving removal of ankle bracelet)), nor authorize him to leave the district,

5

the state, or the country.  Instead, the government here moved for remand into custody immediately after the guilty verdict and asked to be heard then and there, but the Court indicated that it wished for briefing and a proffer as to potential changes in release conditions. Nothing the government did, or allegedly failed to do, increased the risks to Sureties, materially or otherwise.

Sureties' argument also ignores reality.  This Court may take judicial notice that defendant's Malibu and/or Westlake Village location was about three hours' drive from the Mexican border.[2] Defendant was in this district until the night before the June 2 hearing, and intentionally fled in a hurry, leaving little lead time to marshal human assets to apprehend him even if he had been wearing an ankle bracelet.  It is commonly known that defendants wearing ankle monitors can flee.  See, e.g., Department of Justice Press Release, Man Sentenced to 20 Years in Prison for Role in $73 Million Global Cryptocurrency Investment Scam, https://www.justice.gov/opa/pr/man-sentenced-20-years-prison-role-73-million-global-cryptocurrency-investment-scam (accessed 5/18/2026) ("The defendant . . . is a fugitive after cutting off his ankle electronic monitoring device and absconding in December 2025.") Thus, there is no factual support for the claim that the government's

---

[2]  See directions from Westlake Village to Tijuana Border, https://www.google.com/maps/dir/Westlake+Village,+California/Border+Crossing+Mexico-US,+Dist+Caracol+Zona+del+R%C3%ADo+721,+Zona+Urbana+Rio+Tijuana,+22010+Tijuana,+B.C.,+Mexico/@33.3488896,-119.2377703,297978m/data=!3m2!1e3!4b1!4m13!4m12!1m5!1m1!1s0x80e83a7a4e32eb09:0xdb574b0c94e2d704!2m2!1d-118.8073729!2d34.1466467!1m5!1m1!1s0x80d949003f463d7d:0x7fd04f938794f643!2m2!1d-117.0284326!2d32.5413451?entry=ttu&g ep=EgoyMDI2MDUxNy4wIKXMDSoASAFQAw%3D%3D (accessed 5/18/2026).

6

supposed failure to make further arguments for an ankle bracelet after this Court's explicit request for briefing regarding defendant's continued release materially changed the risk, under the reasoning of Galvez-Uriarte, that defendant would successfully flee.

Sureties do not appear to contest that the third factor (the cost, inconvenience, and prejudice suffered by the government) weighs in favor of enforcement of the bond. Opposition at 7. While the government has "no obligation to furnish a bill of costs," Nguyen, 279 F.3d at 1117, the government here undertook substantial investigation to locate and attempt to apprehend Fritsch. (See Dkt. 552-4 at 9-20, 22-24 (describing portions of fugitive investigation, including information from U.S. agent in Mexico); 564 (defendant in Germany).) Though a fugitive, defendant filed a notice of appeal, and the government also (successfully) moved to dismiss that appeal. (Dkt. 635.) Accordingly, this factor weighs heavily in the government's favor.

Fourth, this Court may consider "mitigating factors." Here, the Court could consider whether the Sureties "entered the bonding agreement aware of the consequences if defendant disappeared." United States v. Frias-Ramirez, 670 F.2d 849, 853 (9th Cir. 1982) (weighing factors). Sureties here knew the consequences. Sureties signed this Court's Affidavit of Surety (Property) form, and acknowledged,

> I (We) further state that I (we) understand the provisions of the bond of the defendant named above for which this affidavit supports and I (we) acknowledge and agree that I (we) and my (our) personal representatives are bound, jointly and severally with the defendant and any other sureties, to pay to the United States of America the bond amount specified in the event the bond is forfeited.

(Dkt. 56 at 1 (Surety MM); Dkt. 67 (sealed) for Surety TM.) They separately had to sign a Deed of Trust in favor of the Clerk's Office to record against their real estate. (Dkt. 56.) They were close to defendant, and knew he was a foreigner. (Opposition at 3.) While Sureties suggest they were pressed into service based on quick, emotional decision-making, this is not supported by their own timeline, because Sureties had months between August and November 27, 2017 to decide whether to pledge assets to guarantee Fritsch's appearance. (Opposition at 3-4.) Moreover, Surety MM is a sophisticated professional, a top dentist in his region, and holds a American Academy of Cosmetic Dentistry accreditation with "an elite group of only 6 other dentists in Minnesota." (Exhibit 1, at 1 (from Surety MM's website).) The assertion that these Sureties were unaware of the risk, or did not knowingly or voluntarily take on their obligation is simply not credible. Instead, theirs was a knowing and considered decision. They just trusted the wrong person, but the defendant's breach of their trust (true in any surety matter) is not one of the Amwest considerations.

As for the "mitigation" factor, Sureties urge the Court to weigh in their favor the fact that they separately loaned money to defendant and may have lost that money. (Opposition at 5.) But their financial mistakes have nothing to do with their bond obligation. It will be true for many family members that an absconded defendant left them hanging financially in many ways, separate and apart from the pain of losing money on the bond obligation.

8

The purpose of a bond is to secure the defendant's appearance and compliance with release conditions.  Congress has directed courts to impose conditions that "will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]"  18 U.S.C. § 3142(c)(1)(B).  "To serve the purposes of the Bail Reform Act, however, bail commitments by family and friends must be real" that is, "significant and likely to be enforced[.]" United States v. Villalobos, 2005 WL 6127290, at *5 (N.D. Cal. Feb. 17, 2005).  If knowing, voluntary, sophisticated sureties are released from their obligations, defendants will not believe that their sureties will suffer if the defendants flee or violate their release conditions, and the power of a bond to "reasonably assure" appearance and compliance will be gutted.  Hence, mitigating factors should be tied to the purposes of bond and the specific role the surety plays limited to that bond (such as whether they understood the bond conditions, or, where relevant, understood that something less than flight could trigger the loss of their property). Consideration of the Sureties' other errors in judgment relating to the defendant that neither the Court nor the government encouraged are not relevant to the Amwest calculus.  Nor is it mitigating to Sureties that other family members, such as defendant's ex-wife, are not subject to bond forfeiture, particularly where Sureties never asked to be released from their obligations even though they had their doubts about defendant even before his conviction at trial. (Opposition at 5 (referring to August 2024 lawsuit).)

The Court may consider that Sureties were family members, not professionals.  However, the Ninth Circuit has "decline[d] to adopt .

9

. . . a 'loving relative' exception to our bond forfeiture jurisprudence." Nguyen, 279 F.3d at 1117 n.2. The majority of sureties this Court encounters are likely family members, rather than professionals, or even friends. "The [very] purpose of bail is not served unless losing the sum would be a deeply-felt hurt to the defendant and his family; the hurt must be so severe that defendant will return for trial rather than flee." United States v. Townsend, 897 F.2d 989, 996 (9th Cir. 2008). In the absence of a "loving relative" exception, the fact that the surety is a family member is noted but does not weigh heavily in favor of setting aside the bond, or more bonds would be set aside, thus undercutting the entire purpose of bond. This is particularly true where, as here, the relative accepted the obligation with eyes open.

Finally, sureties do not contest that the bond amount was reasonable when set, which it plainly was, another factor weighing in favor of enforcement.

In the final analysis, Sureties simply trusted the wrong person. They knew exactly what would happen if Fritsch fled. They just believed his promise not to flee. On balance, consideration of the relevant factors weighs strongly in favor of the government, and the bond should be enforced in full.[3]

**IV.  CONCLUSION**

The government's Motion should be granted, and the Court should decline to set aside any portion of the bond.

---

[3]  This Court has the discretion to set the bond aside "in whole or in part." Fed. R. Crim. P. 46(f)(2). Sureties have not requested a partial set aside, and this Court should not grant one. The portion for which Sureties are liable is a reasonable and small fraction of the full bond for which defendant is liable.

10