CLARK HILL LLP
KATIE J. BRINSON (CA SBN 266091)
kbrinson@clarkhill.com
555 South Flower Street, 24th Floor
Los Angeles, CA 90071
Telephone:   (213) 891-9100
Facsimile:   (213) 488-1178

CLARK HILL PLLC
CRANE POMERANTZ (NV SBN 14103)
*Pro Hac Vice Application Forthcoming*
cpomerantz@clarkhill.com
FORREST ZIMMERMAN (NV SBN 17017)
*Pro Hac Vice Application Forthcoming*
fzimmerman@clarkhill.com
1700 S. Pavilion Center Drive, Suite 500
Las Vegas, NV 89135
Telephone:   (702) 862-8300
Facsimile:   (702) 778-9709

Attorneys for SURETY DAVID STOCKER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES,<br><br>                              Plaintiff,<br><br>     v.<br><br>BERNHARD EUGEN FRITSCH,<br><br>                              Defendant. | Case No. 2:17-CR-00520-DSF<br><br>**SURETY DAVID STOCKER'S OPPOSITION TO GOVERNMENT'S NOTICE OF MOTION FOR SUMMARY ADJUDICATION OF OBLIGATION WITH RESPECT TO DEFENDANT BERNHARD EUGEN FRITSCH AND HIS SURETIES DAVID STOCKER, MARC MONTGOMERY, AND THERESA P. MONTGOMERY** |

**Certification**:  This opposition is timely filed.

Surety David Stocker ("Mr. Stocker" or the "Surety"), by and through undersigned counsel, respectfully submits this Opposition to Government's Notice of Motion for Summary Adjudication of Obligation with respect to Defendant Bernhard Eugen Fritsch and his Sureties David Stocker, Marc Montgomery, and Theresa P. Montgomery (ECF No. 636) (the "Government's Motion").  Mr. Stocker respectfully requests that the Court apply a $75,000 remittitur.

///

1

# MEMORANDUM OF POINTS AND AUTHORITIES

## A.    INTRODUCTION

The issue raised in this Opposition is not whether the Court has the authority to forfeit a bond when a defendant violates the terms of his release or whether it has the authority to forfeit the full amount of the bail posted by a surety.  The Court's authority to do both is beyond serious argument.  But Rule 46(f)(1) confers discretion upon the Court to set aside or remit all or part of a forfeiture "if it appears that *justice* does not require bail forfeiture." Fed. R. Crim. P. 46(f)(2)(b) (emphasis added).  The word "justice" establishes that fairness is a necessary component of all Rule 46 determinations.  This is the fundamental flaw in the Government's Motion.  Not only does it fail to articulate why "justice" will be served by entering an order imposing a $100,000 judgment against the defendant's son – and raises the question whether the government merely is acting in a punitive manner – it fails to address at all the six-factor test set forth in *United States v. Amwest Sur. Ins. Co.*, 54 F.3d 601, 603 (9th Cir. 1995) used to assess whether the Court should set aside or remit a forfeiture.  In other words, the government assumes, without demonstrating, that a forfeiture of the full amount of the surety is appropriate.  The proper application of the *Amwest* test, as set forth below, demonstrates that a $75,000 remittitur is appropriate.  The Court should enter judgment against surety David Stocker in the amount of $25,000, jointly and severally liable with the Defendant.

## B.    PROCEDURAL HISTORY AND STATEMENT OF FACTS

On November 30, 2017, the Court ordered defendant Bernhard Eugen Fritsch ("Mr. Fritsch" or the "Defendant") released on bond pending trial. ECF No. 48. The Court conditioned Mr. Fritsch's release upon an affidavit of surety without justification from his son, Mr. Stocker, the movant herein, in the amount of $100,000.  The Court subsequently obtained affidavits of surety from two additional individuals, Theresa Montgomery and Marc P. Montgomery, both the amount of $134,129.07, secured with the deed of a property in St. Paul, Minnesota.  ECF Nos.

2

56 and 67.  The defendant also posted his own surety in the amount of $7,205,000, secured with the deed of a property in Malibu, California.  ECF No. 58.

On April 3, 2025, a jury convicted Defendant Fritsch of one count of wire fraud and acquitted him on one count of wire fraud.  ECF No. 509.  The Court allowed him to remain on release pending sentencing.  *See* ECF No. 531 (Unopposed ex parte application for order permitting domestic travel).  On June 2, 2025, Defendant Fritsch failed to appear for a hearing; the Court ordered his bond revoked and forfeited it that day.  ECF No. 536.  The Court sentenced Defendant Fritsch in absentia and issued an Order directing him to surrender immediately.  ECF No. 572.  Defendant Fritsch allegedly fled the United States and has not appeared in this proceeding since.  ECF No. 636 at 4:15-17.

On April 20, 2026, the government moved the Court, pursuant to Federal Rule of Criminal Procedure 46(f)(1) and (f)(3) and Local Criminal Rule 46-6, for an Order for summary adjudication of Mr. Stocker's (and the other surety's) obligations.  ECF No. 636.  It seeks an Order entering judgment against Mr. Stocker in the amount of $100,000, jointly and severally liable with the Defendant.  ECF No. 636-1 (Proposed Order).  Copies of the Government's Motion were mailed to Mr. Stocker's last known address on May 4, 2026.  ECF No. 637.

## C.    ARGUMENT

The Court must declare a defendant's bail forfeited if any "condition of the bond is breached." Fed. R. Crim. P. 46(f)(1).  It has the discretion, however, to set aside or remit a forfeiture "upon any condition the court may impose if . . . it appears that *justice* does not require bail forfeiture." Fed. R. Crim. P. 46(f)(2)(B) (emphasis added).  By incorporating the word "justice" into the rule, the drafters emphasized both how much discretion the Court has to remit a forfeiture and that fairness, cabined only by the statutory boundaries of the Bail Reform Act (18 U.S.C. § 3142), is a primary factor when deciding whether to do so.  *See Yith v. Nielsen*, 881 F.3d 1155, 1165 (9th Cir. 2018) ("unless otherwise defined, words will be interpreted as

taking their ordinary, contemporary, common meaning.")

The Ninth Circuit has set forth a six-factor test the Court should consider when deciding whether justice mandates a remittitur of a bond.

> 1) the defendant's willfulness in breaching a release condition; 2) the sureties' participation in apprehending the defendant; 3) the cost, inconvenience, and prejudice suffered by the government; 4) mitigating factors; 5) whether the surety is a professional or a member of the family or a friend; and 6) the appropriateness of the amount of the bond.

*United States v. Amwest Sur. Ins. Co.*, 54 F.3d 601, 603 (9th Cir. 1995); *see United States v. Ruiz-Solis, No. 20-50265*, 2022 WL 118644, at *3 (9th Cir. Jan. 12, 2022) (dissent) (noting different formulations as to whether the Court "should" or "must" consider these factors).[1]

Application of these factors does not invite a "mathematical exercise." *United States v. Villalobos*, *No. 00-40242 CW WDB*, 2005 WL 6127290, at *3 (N.D. Cal. Feb. 17, 2005). In other words, the Court should "not simply to determine how many of the pertinent factors favor the surety and how many favor the government, then base [its] ruling on which party's raw numerical score is higher." *Id*. Instead, "the relative weight the [Court] may ascribe to the acknowledged factors can vary from case to case-and that in some circumstances one or two factors might play a determinative role, even if all the other factors seemed to point toward a different outcome." *Id*.

The Government's Motion never addresses the fairness of full forfeiture, never mind engage in any analysis of the *Amwest* factors. Despite the government's certainty that a $100,000 judgment should be imposed against Mr. Stocker, it never *demonstrates* that such judgment is just. The result is a motion for summary

---

[1] The Government's Motion cites several times to *United States v. Noriega-Sanabria*, 116 F.3d 417 (9th Cir. 1997). It is inapposite. The issue in *Noriega* was whether certain "technical defects" rendered the surety bond "void ab initio." 116 F.3d at 419. The quote upon which the government relies – "[t]he court, the government, and the public may be doubly disappointed when a defendant flees, if the sureties cannot, or will not, abide by their promises" – adds little to the analysis of whether Mr. Stocker's surety should be reduced, because there is no suggestion that he cannot abide by the promise *he* made.

4

adjudication of Mr. Stocker's surety obligation that is entirely conclusory, resting on the existence of the surety bond and Mr. Fritsch's failure to appear for sentencing. This alone is grounds for denying the Government's Motion.

So is application of the *Amwest* factors. As to the first factor, Mr. Stocker is not in a position to challenge the Defendant's willfulness in breaching his release condition. The record in this case speaks for itself; the Defendant did not appear for sentencing and, apparently, has not appeared in this case since.

The second factor begins to tilt away from the government. Mr. Stocker did not participate in the defendant's apprehension. But while the record is silent as to whether Mr. Stocker took affirmative, voluntary steps to apprehend the defendant, it is also silent as to whether the government ever *asked* for his assistance. Moreover, Mr. Stocker did not know in advance that the Defendant was going to leave the United States, did not assist him in absconding, and did not interfere in any way with the effort to locate him, if any. Declaration of Surety David Stocker in Support of Opposition to Government's Notice of Motion for Summary Adjudication (hereinafter "Stocker Dec.") at ¶¶ 7-8.

The third factor, the "cost, inconvenience, and prejudice" allegedly suffered by the government, begins to turn more strongly in Mr. Stocker's favor. There appears to be little prejudice to the government. The Defendant was tried to completion and sentenced in absentia. In a real way, the government accomplished all of its objectives in this case: to try the Defendant successfully, forever brand him a felon, and secure a lengthy prison sentence for him, should he ever return to the United States, voluntarily or otherwise. It is this procedural posture that distinguishes this case from others denying remittitur; *the Defendant was both tried and sentenced*. While the government apparently views the Defendant's departure from the United States as some sort of victory for him, the practical inability to return to the United States, where he apparently lived for many years and where his son currently lives, constitutes a legitimate form of punishment and protects the United

States' citizenry from further crimes of the Defendant.  18 U.S.C. § 3553(2)(A) and (D).  Any prejudice to the government is small.

As is its cost. The government has never articulated: (1) what efforts it undertook to repatriate the Defendant; or (2) the cost of those efforts.  Understanding that the Court need not calculate a "rough proportionality between the extent of the forfeiture and the extent of the government's burden," *Villalobos*, 2005 WL 6127290, at *8, to the extent the government believes total forfeiture is appropriate and remittitur is not, it bears the burden of demonstrating some cost to it.   Instead, the record is bare as to any substantial efforts taken and, thus, cost incurred by the government as a result of the Defendant's flight. *See* ECF No. 564 (Government's Notice that Defendant's Last Known Location is Munich Germany) (including a declaration from the case agent that Defendant arrived in Munich on October 7, 2025, but silent as to any effort to repatriate him); ECF No. 552 (Sentencing Memorandum) at 19:11-20 (describing the Defendant's efforts to avoid detention in Mexico, but not the United States' efforts to locate him or return him to the United States).  The docket suggests that the government has complained heavily about the Defendant's flight but has not actually done much about it.

Next, the surety is the Defendant's son, not a professional.  Mr. Stocker is left "holding the bag" from his father's flight.  This alone cuts in Mr. Stocker's favor.  But this factor leans even more in his favor upon closer examination.   The Government's Motion appears motivated, in a real way, by a desire to punish the Defendant, somehow, someway – in this case obtaining large judgments against Mr. Stocker and the Montgomery's.  Indeed, the Government's Motion seems motivated as much by the fact that it was unable to forfeit the Defendant's very expensive Malibu home as anything else, causing it to seek payback by obtaining a large judgment against his son. Government's Motion at 2, n.4; *see also* ECF No. 524 (accusing the defendant of violations of release conditions and bankruptcy fraud in relation to the Malibu home).  But "a desire to punish either the defendant or the

SURETY DAVID STOCKER'S OPPOSITION TO NOTICE OF MOTION FOR SUMMARY ADJUDICATION
CASE NO.  2:17-CR-00520-DSF

surety plays *no role*" in the Court's decision. *Id*. at \*4 (N.D. Cal. Feb. 17, 2005); *see United States v. Gladding*, No. 1:09-CR-00265OWWSMS, 2010 WL 3075653, at \*7 (E.D. Cal. Aug. 5, 2010), *report and recommendation adopted,* No. 1:09-CR-00265, 2010 WL 3618631 (E.D. Cal. Sept. 13, 2010) ("A forfeiture should not be motivated by frustration or vindictiveness."). Rather the purpose of enforcing a bond "is not to punish anyone - but to increase the likelihood, generally, that defendants and sureties will take their bond commitments seriously and that defendants will attend scheduled court appearances. . ." *Id*. What the government has not demonstrated is how imposition of a $100,000 judgment against the defendant's son*, in this case,* will cause all defendants and sureties to take their sureties more seriously.[2]

The appropriateness of the amount of the bond is neutral or weighs slightly in Mr. Stocker's favor. The Defendant's appearance was secured by a very large amount of money: Mr. Stocker's $100,000 surety was posted at the same time that the Defendant posted his $7.2 million Malibu home, the Mongomery's each posted approximately $134,000, and Lisa Marie Fritsch posted $680,000 (subsequently released). ECF Nos. 60-68. If the government had its way, it would treat over $8 million as a liquidated damages provision for its troubles. *Gladding*, 2010 WL 3075653, at \*7.

The Court also may consider mitigating factors, including the extent which

---

[2] Mr. Stocker recognizes that "it is important that sureties and defendants understand that bond commitments made by sureties are real" and that a "surety who believes that her exposure under a bond is real and significant is more likely to care about how and what the defendant is doing while he awaits the disposition of his case-and is more likely to-put pressure on the defendant to toe the line." *Villalobos*, 2005 WL 6127290, at \*5. But that calculus is altered when the defendant is a father accused of a serious crime and the surety is his son, as here. Most fathers would likely hold disproportionate power over their children in a way that friends or colleagues do not. Even in the absence of a hard and fast "loving relative" exception to a Court's bond forfeiture assessment, *United States v. Nguyen*, 279 F.3d 1112, fn. 2 (9th Cir.2002), it would be naïve to suggest that the father-son relationship did not play some role in Mr. Stocker's inability to force his father to "toe the line." At the least, this is a unique situation that further augurs in favor of Mr. Stocker when applying the fifth *Amwest* factor.

SURETY DAVID STOCKER'S OPPOSITION TO NOTICE OF MOTION FOR SUMMARY ADJUDICATION
CASE NO. 2:17-CR-00520-DSF

the surety was "aware of their obligations under the bond agreement." *United States v. Gifford*, 423 F. Supp. 3d 819, 824 (C.D. Cal. 2019). While Mr. Stocker is quick to acknowledge that he does not believe he was taken advantage of by his father or his father's attorneys, the following facts are indisputable: He was twenty-one (21) years old when he signed the surety and still in college. Stocker Dec. at ¶¶ 3-4. He did not fully appreciate his responsibilities under the surety, commensurate with his age, and, in retrospect, may not have agreed to serve as a surety if he understood the significance of the role. *Id*. at ¶ 4. He was betrayed by his father and was concerned enough by the Defendant's sudden departure that he filed a missing person's report with the Malibu Sherriff's Department. *Id*. at ¶ 8. Moreover, he lacks the means to cover a $100,000 judgment. *Id*. at ¶ 11. Imposing a $100,000 judgment against him would largely be symbolic and a pyrrhic victory for the government. *Id*.

Mr. Stocker was a twenty-one (21) year old college student when he agreed to serve as a surety for his *father*. He lacked the means and the full understanding of what he was agreeing to do and, ultimately, was betrayed by his father. Nonetheless, the government wants to impose upon him a $100,000 penalty for his father's flight, even though it successfully prosecuted the Defendant and, by all accounts, took limited action to retrieve him from Mexico or Germany. Justice in this case, as required by Rule 46, does not require the Court, as the biblical phrase goes, to visit the sins of the father upon the son. A $75,000 remittitur, resulting in a $25,000 judgment, will emphasize that "bond commitments made by sureties are real" while still achieving a fair result for Mr. Stocker. *Villalobos*, 2005 WL 6127290, at *5.

///

///

///

///

///

SURETY DAVID STOCKER'S OPPOSITION TO NOTICE OF MOTION FOR SUMMARY ADJUDICATION
CASE NO. 2:17-CR-00520-DSF

**D.      CONCLUSION**

Based on the foregoing, Mr. Stocker respectfully requests that the Court deny the government's motion for total forfeiture of his surety and remit the amount due by $75,000, resulting in a judgment against him in the amount of $25,000.

Dated:  June 1, 2026                    CLARK HILL LLP

By: _____
                                            Katie J. Brinson
                        Attorneys for SURETY DAVID STOCKER

SURETY DAVID STOCKER'S OPPOSITION TO NOTICE OF MOTION FOR SUMMARY ADJUDICATION
CASE NO.  2:17-CR-00520-DSF

## CERTIFICATE OF SERVICE

I am employed in the County of LOS ANGELES, State of California.  I am over the age of 18 and not a party to the within action; my business address is 555 South Flower Street, 24th Floor, Los Angeles, California 90071.

On June 1, 2026, I served the foregoing document(s) described as:

**SURETY DAVID STOCKER'S OPPOSITION TO GOVERNMENT'S NOTICE OF MOTION FOR SUMMARY ADJUDICATION OF OBLIGATION WITH RESPECT TO DEFENDANT BERNHARD EUGEN FRITSCH AND HIS SURETIES DAVID STOCKER, MARC MONTGOMERY, AND THERESA P. MONTGOMERY**

on the parties in this action:

☑        VIA CM/ECF:  I electronically filed the foregoing document with the Clerk of Court by using the Court's CM/ECF system and the registered CM/ECF users will be served electronically by the CM/ECF system

Executed on June 1, 2026, at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

*MELISSA DE LOS REYES*
MELISSA DE LOS REYES

SURETY DAVID STOCKER'S OPPOSITION TO NOTICE OF MOTION FOR SUMMARY ADJUDICATION
CASE NO.  2:17-CR-00520-DSF