# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br><br>            v.<br><br>BERNHARD EUGEN FRITSCH,<br>    Defendant. | 2:17-cr-00520-DSF<br><br>Order GRANTING Motion for Summary Adjudication of Obligation with Respect to Defendant and His Sureties (Dkt. 636) |

The government moves for summary adjudication of bond obligations against Defendant Bernhard Eugen Fritsch and Sureties David Stocker Fritsch (Stocker), Marc Montgomery, and Teresa P. Montgomery.  Dkt. 636 (Mot.).  Sureties Stocker and the Montgomerys oppose.  Dkt. 646 (Stocker Opp'n); Dkt. 638 (Montgomery Opp'n). Defendant remains at large and has not opposed.  Stocker seeks a partial set aside of $75,000 on his bond amount of $100,000, reducing it to $25,000.  Stocker Opp'n at 1.  The Montgomerys seek to fully set aside the bond forfeiture.  Montgomery Opp'n at 2.  At the June 15, 2026 hearing on the motion, the government and the Montgomerys indicated they had reached a settlement.  Having considered the parties' briefs and oral argument, the Court GRANTS the government's motion as to Defendant and Stocker.

## I. Legal Standard

Under Rule 46(f)(1) of the Federal Rules of Criminal Procedure, courts "must declare the bail forfeited if a condition of the bond is breached."  Fed. R. Crim. P. 46(f)(1).  "[F]orfeiture is thus mandatory." United States v. Nguyen, 279 F.3d 1112, 1115 (9th Cir. 2002).

Forfeiture, however, may be "set aside in whole or in part" if "the surety later surrenders into custody the person released on the surety's appearance bond," or "it appears that justice does not require bail forfeiture."  Fed. R. Crim P. 46(f)(2).

Courts consider six factors to analyze what justice requires: "1) the defendant's willfulness in breaching a release condition; 2) the sureties' participation in apprehending the defendant; 3) the cost, inconvenience, and prejudice suffered by the government; 4) mitigating factors; 5) whether the surety is a professional or a member of the family or a friend, and 6) the appropriateness of the amount of the bond."  Nguyen, 279 F.3d at 1115-16 (quoting United States v. Amwest Sur. Ins. Co., 54 F.3d 601, 603 (9th Cir. 1995)).  The district court is afforded "wide discretion" in making its determination.  Id. at 1115.

## II. Discussion[1]

Stocker concedes that the first factor weighs against setting aside forfeiture.  Stocker Opp'n at 5.[2]  The Court agrees.  Stocker argues that the "second factor begins to tilt away from the government" because the record is "silent as to whether the government ever *asked* for his assistance," and "Stocker did not know in advance the Defendant was going to leave the United States, did not assist him in absconding, and

---

[1] Because the Montgomerys have settled with the government, the Court addresses only Stocker's opposition.

[2] Stocker argues that the government "never *demonstrates* that such judgment is just" and fails to "engage in any analysis of the Amwest factors."  Stocker Opp'n at 4.  Stocker cites no authority to support his position that the government bears that burden.  In fact, circuits that have addressed the issue place the burden on the party opposing forfeiture.  See, e.g., United States v. Gambino, 17 F.3d 572, 574 (2d Cir. 1994) ("The burden of establishing grounds for remission is on the party challenging the forfeiture."); United States v. Cervantes, 672 F.2d 460, 461 (5th Cir. 1982) (same); see also United States v. Sar-Avi, 255 F.3d 1163, 1168 (9th Cir. 2001) (finding the defendant had "not met his burden to prove" the first factor).

did not interfere in any way with the effort to locate him[.]" Stocker
Opp'n at 5.

But the government is not obliged to seek assistance from
Stocker. As a surety, Stocker "had one simple obligation—to assure
[Defendant's] appearance when promised. . . . It was [Stocker's] duty to
learn whether [Defendant] was in violation of the bond requirements[.]"
Nguyen, 279 F.3d at 1116. In his declaration, Stocker represents that
he had contact with Defendant "several months after" Defendant had
absconded. Dkt. 646-1 ¶ 9. Despite being in contact with Defendant,
Stocker acknowledges that "the record is silent as to whether [he] took
affirmative, voluntary steps to apprehend the defendant[.]" Opp'n at 5.
The Court concludes from this silence that Stocker "did nothing to
assure [Defendant's] presence," Nguyen, 279 F.3d at 116, or even to ask
Defendant to return so the bond would not be forfeited. The
government contends that this factor is neutral, but, based on the
record, the Court finds that this factor tilts in favor of full forfeiture.[3]

For the third factor, Stocker contends that there "appears to be
little prejudice to the government" because "the government
accomplished all of its objectives in this case: to try the Defendant
successfully, forever brand him a felon, and secure a lengthy prison
sentence for him, should he ever return to the United States," and "the
practical inability to return to the United States, where he apparently
lived for many years and where his son currently lives, constitutes a
legitimate form of punishment . . . ." Stocker Opp'n at 5. The Court
disagrees. It is absurd to suggest that living at large abroad in his
native country is in any way equivalent to serving a prison sentence in
the United States.

Stocker also argues that the government "has never articulated:
(1) what efforts it undertook to repatriate the Defendant; or (2) the cost
of those efforts." Stocker Opp'n at 6. First, "[t]he government has no
obligation to furnish a bill of costs . . . nor can the cost and

---

[3] The Court's decision would be the same regardless of whether the factor is
neutral or favors forfeiture.

inconvenience factor be dismissed simply because they were not substantial." Nguyen, 279 F.3d at 1117.  Second, the government has outlined the numerous steps it has taken to apprehend Defendant, including an ongoing non-public investigation.  Dkt. 647 (Reply to Stocker Opp'n) at 8 & n.5.  The Court agrees with the government that this factor weighs heavily against setting aside the forfeiture.

The fifth factor—whether the surety is a professional or a member of the family or a friend—arguably weighs slightly in favor of Stocker.  But the fact that Stocker is Defendant's son is not dispositive. See Nguyen, 279 F.3d at 1117 n.2 ("We decline to adopt . . . a 'loving relative' exception to our bond forfeiture jurisprudence.").  Indeed, courts have recognized that "where defendants are released without the actual posting of a money bond, but rather on the potential risk of a money judgment, 'bail commitments by family members and friends must be real' in order to have the desired effect of inducing a defendant to comply with his or her release conditions[.]" United States v. Murphy, No. 19-cr-00043-YGR (DMR), 2020 WL 790407, at *7 (N.D. Cal. Feb. 18, 2020) (quoting United States v. Famiglietti, 548 F. Supp. 2d 398, 408 (S.D. Tex. 2008)).

"The purpose of bail is not served unless losing the sum would be a deeply-felt hurt to the defendant and his family; the hurt must be so severe that defendant will return for trial rather than flee." United States v. Townsend, 897 F.2d 989, 996 (9th Cir. 1990) (citation omitted).  Evidence presented at trial revealed the apparently close relationship between Defendant and Stocker, and the Court relied in part on that relationship when it declined to order immediate remand after the verdict.  Though the fifth factor may weigh slightly in favor of Stocker, the Court places little weight on it absent mitigating circumstances.

Stocker additionally argues that the associated mitigating circumstances—the fact that he was twenty-one years old and still in college when he signed the affidavit of surety—weighs in his favor. Stocker Opp'n at 8.  Stocker declares that he "did not fully understand the gravity of what [he] was signing," and though he did "not think

anyone took advantage of [him]," his "father and his lawyers persuaded [him] to sign because they said it would help him."[4]  Dkt. 646-1 ¶ 4. That Stocker was twenty-one years old and in college does not support his claim that he did not understand the gravity of signing the affidavit of surety.  He does not claim any limited ability to read and understand the document, and he disclaims that Defendant and his lawyers took advantage of him.  Opp'n at 8 (citing Dkt. 646-1 ¶¶ 3-4).  In fact, Stocker offered an additional unsecured affidavit of surety in the amount of $30,000 as part of the proposed new bond package to be provided after the verdict.  Dkt. 528 at 7.  The Court finds these circumstances do not warrant partial set aside.[5]

Stocker claims that the sixth factor—the appropriateness of the amount of the bond—"is neutral or weighs slightly in Mr. Stocker's favor."  Stocker Opp'n at 7.  Stocker argues, "If the government had its way, it would treat over $8 million as liquidated damages provision for its troubles."  Id.  But the Ninth Circuit does "not require that the bond approximate costs.  Instead, [the circuit] regard[s] forfeiture as a form of liquidated damages."  Amwest Surety Ins. Co., 54 F.3d at 604. "Indeed, appropriateness looks more to the proper fixing of the amount of the bond itself."  Id.  Stocker does not contend that his bond amount of $100,000 is inappropriate "in light of the offense with which defendant was charged."  Id. (quoting United States v. Frias-Ramirez, 670 F.2d 849, 853 (9th Cir. 1982)).  Indeed, Defendant was charged

---

[4] As noted above, his lawyers were correct.

[5] Stocker also raises the government's motivations for bringing its motion—namely that it "seems motivated as much by the fact that it was unable to forfeit the Defendant's very expensive Malibu home as anything else, causing it to seek payback by obtaining a large judgment against his son."  Stocker Opp'n at 6.  First, the record does not support such a framing.  Second, Stocker signed his Affidavit of Surety for $100,000 on November 22, 2017, dkt. 60, several years before the government's motion that Stocker characterizes as "accusing the defendant of violations of release conditions and bankruptcy fraud in relation to the Malibu home," Stocker Opp'n at 6 (citing Dkt. 524).

with making $7.9 million in unauthorized transfers.  Dkt. 19 ¶ 3(d). The Court finds that this factor weighs against setting aside forfeiture.

Having considered all six factors, the Court finds the government has established that forfeiture was appropriate and Stocker has not established that "justice does not require bail forfeiture."  Fed. R. Crim P. 46(f)(2).

## III. Conclusion

For the foregoing reasons, the government's motion is GRANTED.  Defendant is liable to the United States for the amount of the forfeited bail, $7,439,129.07, together with interest and costs.  Of that amount, Stocker is jointly and severally liable with Defendant in the amount of $100,000.00, plus interest and costs.  Defendant's liability shall be reduced by the amount Marc and Teresa Montgomery pay to the United States on the bond at issue.

IT IS SO ORDERED.

Date: July 6, 2026

Dale S. Fischer
United States District Judge

6